JOHN SMITHSON v. CHICAGO GREAT WESTERN RAILWAY COMPANY and Others.[1]

January 14, 1898.

Nos. 10,922—(224).

**United States Court—Decision Remanding Case to State Court Final.**
When a circuit court of the United States decides that a cause has been improperly removed from a state court, and orders that such cause be

[1] Reported in 73 N. W. 853.

remanded, the decision is final, under the federal statute.   No appeal or writ of error from such decision is allowed.

### Same—Removal of Case to Federal Court—Waiver by Defendant.

A defendant entitled to have his case removed from a state to a federal court, or from the latter to the former, there being no question of jurisdiction over the subject-matter or over the parties, may waive his rights to insist upon a removal by his acts or omissions.

### Same—Effect of Stipulation.

It is held that a stipulation entered into between counsel for appellants and respondent, while the former were in default for want of answer, settled the controversy as to appellants' right to have the case tried in the federal court, and that thereby the place of trial was fixed in the state court.

### Railway—Violation of Rules Governing Employees—Evidence of Negligence—Personal Injuries.

The fact that certain rules promulgated and put in force for the guidance and government of railway employees, while operating locomotives, have been violated, may be shown upon the trial of an action for personal injuries received by an employee, said to have been caused by such violation, and the fact may be considered as evidence tending to establish negligence of the defendant.

### Same—Private Rules and Public Statutes or Ordinances—Compliance with Former Not Necessarily Reasonable Care—Violation of Latter Not Necessarily Negligence.

But such rules do not stand on the same footing as statutes or municipal ordinances, in the nature of police regulations, for the protection of the public or some particular class of persons.   The law, statutory or municipal, if valid, fixes the legal standard of duty to those for whose protection it was designed, while private rules may require either more or less than is required by law.   Compliance with the latter would not necessarily constitute reasonable care, nor would the violation thereof necessarily constitute negligence.

### Personal Injuries—Servant of One Railway Injured by Servants of Another Company—Negligence—Charge of Court Erroneous.

On the trial of an action for personal injuries alleged to have been received by plaintiff while employed as a locomotive fireman by one company, through the negligence of the men in charge of the locomotive of another company, and in a collision, both companies using the same tracks, owned by a third company, the rules promulgated by the latter for the government of all trainmen using the tracks were put in evidence, together with proof that one or more of these rules were being

violated by defendants' (appellants') employees when the collision occurred. The court charged that, if the jury should find from the evidence that the rules were being violated when the collision took place, they might consider defendants' negligence as established. *Held*, that this was error.

**Same—Error without Prejudice.**

But such an instruction is held to have been error without prejudice, for the reason that, upon the undisputed evidence as to the facts and circumstances surrounding the collision, the trial court would have been justified in charging the jury that defendants' negligence was established as a matter of law.

Action begun October 2, 1895, in the district court for Ramsey county against the defendant railway company, and the receivers of the Wisconsin Central Company and of the Wisconsin Central Railroad Company, to recover $25,000 for personal injuries suffered by plaintiff on March 7, 1894, while employed as fireman by the Chicago Great Western Railway Company.

On October 22, 1895, defendant receivers filed their petition for removal of the case to the United States circuit court, in which they stated that the Chicago Great Western Railway Company was organized under the laws of Illinois, was a citizen of that state and was not a real party in said action, but was made a party defendant therein for the sole purpose of preventing the removal of the case to the federal court, and that the issues between the plaintiff and that company and between plaintiff and the petitioning receivers were separable and could not be tried as one issue. These allegations were denied by the plaintiff's answer to the petition. On November 2, 1895, the district court, Kerr, J., ordered the removal of the case to the federal court. On February 6, 1896, the circuit court, Nelson, J., remanded the case to the state court by the following order: "Motion to remand granted on authority of Thompson v. C., St. P. & K. C. Ry. Co. and C., M. & St. P. Ry. Co., 60 Fed. 773. So ordered."

The proceedings narrated in the opinion were thereafter taken at the trial in the state court. The court, Willis, J., directed a verdict in favor of the Chicago Great Western Railway Company, while the jury returned a verdict against defendant receivers in the

sum of $12,500. From a judgment against the defendant receivers entered upon this verdict, they appealed. Affirmed.

*McDonald & Barnard* and *Thos. H. Gill,* for appellants.

The receivers sought a removal of the action: (1) On the ground of nonresidence; (2) on the ground that the action was brought against them as officers deriving their authority from federal laws and for official acts exercised by appointment under federal laws; and (3) because there was a separable controversy between plaintiff and the receivers.

If the receivers had been sole defendants, the action would have been unquestionably removable by reason of nonresidence, and because the action was to recover against them as receivers of a federal court. Texas v. Cox, 145 U. S. 593; Rouse v. Hornsby, 161 U. S. 588; White v. Ewing, 159 U. S. 36. The cause of action as between plaintiff and the receivers was separable in the sense of the removal statute. Trowbridge v. Forepaugh, 14 Minn. 100 (133); Langevin v. City, 49 Minn. 189; Berg v. Stanhope, 43 Minn. 176. Therefore appellants as nonresidents had an absolute right of removal. Ayres v. Wiswall, 112 U. S. 187; Beuttel v. Chicago, 26 Fed. 50; New York v. Simon, 53 Fed. 1; Barney v. Latham, 103 U. S. 205; Bacon v. Rives, 106 U. S. 99; Fergason v. Chicago, 63 Fed. 177; Over v. Lake Erie, 63 Fed. 34; Warax v. Cincinnati, 72 Fed. 637; Hukill v. Maysville, 72 Fed. 745; Hartshorn v. Atchison, 77 Fed. 9; 17 Am. & Eng. Enc. Law, 602, 604. As the complaint stated no legal cause of action against the defendant company, the receivers' right to remove is likewise unquestionable. Arrowsmith v. Nashville, 57 Fed. 165; Rivers v. Bradley, 53 Fed. 305; Nelson v. Hennessey, 33 Fed. 113. Even when the receivers are joined with another defendant, whether the cause of action is joint or several, their right to try the case in the federal court is unquestionable. White v. Ewing, supra; Texas v. Cox, supra; Landers v. Felton, 73 Fed. 311; Lund v. Chicago, 78 Fed. 385; Carpenter v. Northern Pacific, 75 Fed. 850; Lanning v. Osborne, 79 Fed. 657; McNulta v. Lochridge, 141 U. S. 327, 331; Jewett v. Whitcomb, 69 Fed. 417; Bock v. Perkins, 139 U. S. 628; Wood v. Drake, 70 Fed. 881; Rouse v. Hornsby, supra.

The order for remand, being based solely on the ground that there was no separable controversy, did not in any manner dispose of the receivers' right of removal on the ground that the action was against them in their official capacity. Though the order of remand settled the right of removal upon the ground of separable controversy, it did not and could not operate to restore to the state court its jurisdiction of the subject-matter and parties to the action. As soon as the bond and petition for removal were filed, showing on their face a removable cause of action, the jurisdiction of the state court was suspended upon both grounds asserted, and any act of the state court in the trial, before its suspended jurisdiction has been fully restored on both grounds, is void. If the remanding order had been general in its terms, the appellants would be bound by the rule that all questions raised had been passed upon, but, having been passed upon a specific ground, the order is effectual and final only as to rights asserted upon that ground.

The rights of appellants to remove were separate and distinct. If the jurisdiction were suspended upon both grounds by the actual removal, it remains suspended upon the second ground because the federal court has not yet determined that that was improperly invoked. Unless the jurisdiction of the state court was restored as to both grounds, that court was not in a position to hear the case. Hence resumption of entire jurisdiction is reviewable here, and if here denied, reviewable in the supreme court of the United States. Missouri v. Fitzgerald, 160 U. S. 556; Carson v. Dunham, 121 U. S. 421; Union Pacific v. Harris, 15 Sup. Ct. 843, 63 Fed. 800. Had the receivers urged their right of removal only upon the ground of their appointment as federal officers under a federal law and had not raised the question of separable controversy or diverse citizenship, a remanding order based wholly upon the ground not relied on would not have been a decision on the other ground. In such a case subsequent proceedings in the state court are coram non judice. Stone v. South Carolina, 117 U. S. 430; Burlington v. Dunn, 122 U. S. 513; Removal Cases, 100 U. S. 457, 475; Railroad v. Koontz, 104 U. S. 5, 14; Wadleigh v. Standard, 76 Wis. 439, 442; Northern v. McMullen, 86 Wis. 501; Marshall v. Holmes, 141 U. S. 589.

The district court erred in denying the receivers' motion for removal of the action to the federal court presented immediately after the dismissal of the action against the other defendant.  Huskins v. Cincinnati, 37 Fed. 504; Evans v. Dillingham, 43 Fed. 177; Yarde v. Baltimore, 57 Fed. 913; Mattoon v. Reynolds, 62 Fed. 417; Cookerly v. Great Northern, 70 Fed. 277; Powers v. Chesapeake, 65 Fed. 129.

When the receivers' contention that the complaint stated but a simple separable cause of action was sustained by the action of the trial court, their right to remove had become absolutely certain.  Arrowsmith v. Nashville, 57 Fed. 165; Board v. Kansas, 4 Dillon, 277.

Even conceding the men operating the receivers' engine were guilty of negligence, such negligence was not imputable to the receivers so as to make them responsible.  The officers of the terminal company had absolute charge over all persons and engines while on their tracks.  Hence at the time of collision the men were not in law the servants of the receivers in the sense that the latter were responsible as master for the negligence of his servants.  To make one person responsible for the negligent act of another, the relation of principal and agent or master and servant must be shown to have existed at the time and in respect to the transaction between the wrong-doer and the person sought to be charged. Upon this relation the doctrine of respondeat superior exists. Thorpe v. New York, 76 N. Y. 402; Ward v. New England, 154 Mass. 419; Dwinelle v. New York, 120 N. Y. 117; Miller v. Minnesota, 76 Iowa, 65; Donovan v. Laing, 1 Q. B. (1893) 629; Smith v. St. Louis, 85 Mo. 418; Wood v. Cobb, 13 Allen, 58; Kimball v. Cushman, 103 Mass. 194; Hitte v. Republican, 19 Neb. 620; Atwood v. Chicago, 72 Fed. 447.  The application of these principles must relieve the appellants.

The receivers are not responsible because the act producing the injury, if done by their servants, was wholly without the scope of their authority.  Bailey, Pers. Inj. § 3513; Davis v. Houghtellin, 33 Neb. 582; Bowler v. O'Connell, 162 Mass. 319; Walton v. New York, 139 Mass. 556; Snyder v. Hannibal, 60 Mo. 413; Louisville v. Douglass, 69 Miss. 723; Illinois v. Latham, 72 Miss. 32; Searle v. Parke

(N. H.) 34 Atl. 744; Graham v. St. Charles, 47 La. Ann. 1656; Mc-Gilvray v. West End, 164 Mass. 122; Texas v. Black, 87 Tex. 160; Thorburn v. Smith, 10 Wash. 479; Walker v. Hannibal, 121 Mo. 575; Morier v. St. Paul, 31 Minn. 351; Smith v. Munch, 65 Minn. 256; Brevig v. Chicago, 64 Minn. 168; Mouso v. Kellogg, 58 Minn. 406; Cofield v. McCabe, 58 Minn. 218; Keating v. Michigan, 97 Mich. 154; Western v. Mullins, 44 Neb. 732; Chicago v. McGinnis, 51 Ill. App. 325; Chicago v. Epperson, 26 Ill. App. 72; Tuller v. Voght, 13 Ill. 278; Chicago v. Mogk, 44 Ill. App. 17.

*John A. Lovely* and *J. F. George*, for respondent.

The order of the federal court remanding the cause was final and res judicata, so far as the right of the state court to try the cause is concerned. The respondent can litigate a cause of action against the receivers of a federal court in a state court. The act of congress of March 3, 1887, and that of August 13, 1888, give this right. 25 Stat. 434. Tennessee v. Union, 152 U. S. 454; Postal v. Alabama, 155 U. S. 482. The decisions of the federal courts recognize the authority of a state court to determine a question between citizens and the receivers of a federal court. Hawes, Jurisd. § 46; Claflin v. Houseman, 93 U. S. 130, 136; Tennessee v. Union, supra. The acts of congress, supra, are recognized in the following cases: Morey v. Lockhart, 123 U. S. 56, 58; Wilkinson v. Nebraska, 123 U. S. 286; Sherman v. Grinnell, 123 U. S. 679; Richmond v. Thouron, 134 U. S. 45; Gurnee v. Patrick, 137 U. S. 143; Thayer, Jur. Fed. Ct. § 34; In re Pennsylvania, 137 U. S. 451; Missouri v. Fitzgerald, 160 U. S. 556. These cases show that the decision of a federal court remanding a cause is absolute. When a federal court has remanded, a Minnesota court will act in accordance with such determination. Tilley v. Cobb, 56 Minn. 295, 299; Roberts v. Chicago, 48 Minn. 521.

Appellants cannot now take advantage of the release of their co-defendant when they have not sought to obtain a new trial on that ground. Clark v. City, 38 Minn. 487. When certain defendants have been eliminated upon a trial of the cause, leaving parties in the case who would have made the action originally removable, it is too late to attempt a removal, for a party may not experiment

on his case in a state court and upon an adverse decision remove it to the federal court. Rosenthal v. Coates, 148 U. S. 142–145; Jifkins v. Sweetzer, 102 U. S. 177.

The receivers may waive their right to insist upon a trial of a cause in the federal court. Kansas v. Daughtry, 138 U. S. 298, 303. Having waived their right it is now too late to question the jurisdiction of the state court. Dillon, Removal, § 84; Home v. Curtis, 32 Mich. 402; Norris v. Atlas, 37 Fed. 279; St. Paul v. McLean, 108 U. S. 212, 217. The contention of the receivers that the stoppage of their engine for an unreasonable length of time was not within the scope of the engineer's authority is answered by the following cases: Mulvehill v. Bates, 31 Minn. 364; Brazil v. Peterson, 44 Minn. 212; Potulni v. Saunders, 37 Minn. 517.

COLLINS, J.

Action for personal injuries received by plaintiff while he was serving defendant Chicago Great Western Railway Company as a locomotive fireman, and in a collision between the locomotive on which plaintiff was at work and another operated by defendants Whitcomb and Morris, as receivers under appointment by the United States circuit court of the Wisconsin Central Company. It was alleged in the complaint that both of these defendants operated locomotives and trains over tracks owned by the Chicago & Northern Pacific Railway Company, in the city of Chicago, and it was on this track that the collision occurred. The negligence alleged on the part of the receivers was in allowing their locomotive to stop and remain standing in the nighttime at a certain place on their track, and when there was imminent danger of a collision, without giving proper or any signals of having so stopped; while the negligence on the part of the Chicago Great Western Company was alleged to be an omission and failure on its part to adopt or establish proper or any rules for the giving of warning signals by its own or other locomotives or trains while being operated on said track.

1. The first question in the case grows out of certain steps taken by the receivers in an effort to remove the cause to the United States circuit court. To this end, and in due time, the receivers

filed a petition for removal and a bond in the district court for Ramsey county, in which court the action had been instituted. The other defendant did not join in this petition, but duly answered in the action. An order of the district court removing the cause as petitioned was made, and a few days afterward, upon the hearing of an order to show cause, the case was remanded by the federal court to the Ramsey county district court upon the ground that it had been improperly removed from the latter, the formal order remanding being filed in February, 1896.

The receivers were then in default for want of answer, and on June 4, 1896, stipulated in writing with plaintiff's attorneys, in consideration of being relieved from this default, and in consideration of their being allowed to answer in the action, that the issues so made should be tried in said district court at the June term, 1896, and that in case of a final judgment against them they would not oppose the allowance of such judgment by the master in chancery. An answer was served in accordance with this stipulation, to which plaintiff replied, and thereafter the cause was continued by consent of counsel for plaintiff and for the receivers until the April term, 1897.

It then came on for trial as against both defendants, but counsel for receivers, in disregard of the remanding order of the federal court and of their own stipulation, attempted to interpose an amended answer, alleging, among other things, a want of jurisdiction on the part of the district court, on the ground that the cause had theretofore been duly removed to and was then pending in the circuit court for the United States, and not elsewhere; and also objected to the introduction of any evidence, upon the ground that the case was still pending in the United States circuit court. The district court very properly refused to permit the amendment, and plaintiff submitted his proofs to a jury. Defendants offered no testimony.

The court then directed the jury to return a verdict in favor of the Chicago Great Western Company upon the ground that plaintiff had failed to make out a case against it; whereupon counsel for receivers filed another removal petition and bond, demanding that, as the Chicago Great Western Company was no longer a defend-

ant, the case was then one for removal.   The court below refused to consider the petition, charged the jury, and, in due season, separate verdicts were returned,—one in favor of plaintiff and against the receivers for substantial damages;  the other, of no cause of action as to the railway company.

There are two sufficient reasons, at least, for holding that the district court did not err in its rulings which finally resulted in submitting the merits of plaintiff's case against the receivers to the jury:

First.  The order of the federal court was and is final;  for it is expressly provided by 25 Stat. 433, that whenever a circuit court shall decide that a cause has been improperly removed to it from a state court, and shall order the same to be remanded, such remand shall be immediately carried into execution, and no appeal or writ of error from the decision of the circuit court shall be allowed.   And the supreme court of the United States has frequently had occasion to refer to this statute, and to declare that the order of the federal court remanding the case is absolutely final.   Nor do we find, as claimed by counsel for defendant receivers, that this rule has in any way been qualified or abridged in Missouri v. Fitzgerald, 160 U. S. 556, 16 Sup. Ct. 389.   And this court has held that when a federal court has acted upon the question, and has remanded a case to a state court, as having been improperly removed,— the state court having jurisdiction of the subject-matter and, of the parties,—the latter court cannot review the ruling.   Tilley v. Cobb, 56 Minn. 295, 57 N. W. 799.

Second.  The receivers, in consideration of being permitted to answer the complaint after having been in default for several months, expressly agreed to try the case in the state court. Through this agreement they secured a substantial right,—the right to answer.   If prior to that time there had been a real controversy over the receivers' right to have the cause tried in the federal court, it was then and there settled by a formal stipulation, deliberately entered into by counsel, which they must abide by, and which will be enforced by the courts in the interest of fair dealing and professional good morals.   It seems hardly necessary to con-

71 M.—15

clude on this feature of the case by saying that a defendant who is entitled to have his case removed from a state to a federal court, or from the latter to the former, there being no question of jurisdiction over the subject-matter or over the parties, may waive his rights to insist upon a removal by his acts or omissions.

2. We have stated that the accident occurred upon the track of another company in the city of Chicago. This company leased the use of its two tracks, one for outgoing the other for incoming trains, to these defendants, from what was known as the "Robey Street Roundhouse" to the vicinity of Forest Home. Both defendants used this roundhouse, and plaintiff worked upon a freight locomotive, which usually left the roundhouse about 8:20 p. m., and, taking the train crew, ran out to the yard, about three miles, where it coupled on to its train and proceeded westerly. A freight locomotive, operated by defendant receivers, usually left the roundhouse 15 or 20 minutes later, and, running over the same track, took up its train at the receivers' freight yard in the same vicinity.

On the night in question the locomotive on which plaintiff worked was delayed in starting because of the nonappearance of a brakeman, and, at the request of the engineer who was employed by the receivers, his locomotive was given the right of way. After it had been gone about 20 minutes the locomotive on which plaintiff worked started. When it reached a point near Forty-Eighth street it ran into the other locomotive, and plaintiff received a severe injury. It appears from the evidence that, when the receivers' locomotive reached a point on the main track about opposite the caboose of the train it was to haul out, which was upon a parallel yard track, it was stopped, and there remained long enough for the other locomotive to run into it. The sole purpose of stopping at this point seems to have been to afford some of the trainmen an opportunity to transfer a large dog from the cab of the locomotive, where it had been riding, to the caboose of the train. There was one red light upon the rear of the tender of the receivers' locomotive, but this was not seen by the men on the other locomotive until it was too late to avert the collision. While stopping, the men operating the locomotive in advance had taken no precautions whatsoever towards protecting themselves from collision.

It also appeared from the evidence that the railway company owning these tracks had promulgated and put in force a number of rules for the government of all trainmen while using or occupying these tracks. Several of these rules were applicable to a locomotive or train stopped upon the main track outside of station grounds, and No. 127 was in these words:

"Inasmuch as trains may be expected at any time to be entering the yards or sidings or to stop at any point, without reference to schedules, and as switches are constantly in use, engineers or conductors running trains or engines between Chicago and Central avenue must at all times so control their trains or engines as to be able to stop within the range within which an obstruction of the track and the position of switches can be plainly seen; but nothing in this will be held as an excuse for the failure to display proper signals when trains or engines are held on the main track, and men in charge of trains or engines, when in danger of being overtaken by another train, must protect themselves by flags, lamps, fusees or torpedoes promptly, to avoid all possibility of being run into."

It will be remembered that, as against the defendant receivers, the negligence relied upon by plaintiff in his complaint arose from the failure of those in charge of their locomotive to guard against collision, while stopping, by putting out or giving proper signals for night service; and it was the evidence of this omission or failure to protect the locomotive while standing that was depended upon by plaintiff's counsel as warranting a verdict against the receivers. So the charge of the court upon this branch of the evidence was quite full and complete, reference being made to the rules we have mentioned. Among other things, the court charged as follows:

"The negligence which the plaintiff claims to have existed is said to have consisted in violating the rules which have been offered in evidence.  *  *  *  The violation of these rules, when attended by a wrong, constitutes the fact of admission of negligence on the part of those who violate them. The rules are designed for a wise and beneficent purpose, to transact the business of the railway efficiently, and to protect its employees and passengers, carried by and over its lines, against personal injury. The violation of a definite, well-understood rule on the part of these defendants may be considered by the jury as evidence of negligence, and from the violation of these rules—well understood by the persons who violated them—(if

the jury should find from the testimony that such was the fact that there was this violation) *the jury may consider negligence on the part of the defendants established.*"

And to that part of this language which we have italicized counsel for the defendant receivers took an exception, and now assign it as error.

The instruction was clearly wrong. Here were private rules adopted for the government of trains and trainmen while using these tracks. They did not stand on the same footing as statutes or municipal ordinances in the nature of police regulations for the protection of the public or some particular class of persons. The law, statutory or municipal, if valid, fixes the legal standard of duty to those for whose protection it is designed, while private rules may require either more or less than is required by law. So, compliance with private rules would not necessarily constitute reasonable care, nor a violation thereof necessarily constitute negligence. By this instruction it was declared as a matter of law that, if the employees in charge of this locomotive failed to obey the rule we have quoted by neglecting promptly to put out flags, lamps, fusees or torpedoes, if there was danger of being overtaken, the receivers' negligence was established. The charge really went further than this, for upon the trial it was claimed by plaintiff's counsel that other rules, introduced in evidence and equally as definite and well understood, were also violated when the locomotive was allowed to stand upon the main track.

This instruction, in the form in which it was given, invaded the province of the jury and determined facts. The employees' disregard of the rule, or their failure to give and use such of the signals as would have served as notice or warning of danger in the darkness which prevailed at that time of night, might have been considered by the jury as evidence of negligence, but proof of a failure to observe the rules could not, of itself, establish defendants' negligence at the time of the collision. By this part of the charge the rules adopted for the government of all employees using these tracks were held to be a test for defendants' negligence, and to be the legal standard by which the fact of such negligence should be determined.

But, in this case, the error was without prejudice, because, on the undisputed evidence, the court would have been warranted in instructing the jury, as a matter of law, that those in charge of defendants' engine were guilty of negligence in failing to give warning to others when they stopped upon the track.

They were on a main track over which more than one hundred trains passed each day, part of these that were on time cards, but many that were not. Trains or engines could be expected almost any moment. Adjacent to these main tracks, for there were two, were parallel tracks used for freight trains, with numerous "crossovers" to the main tracks, which were in constant use. It was after dark, and those in charge knew that a belated engine—the one on which plaintiff was fireman—might arrive any moment from the roundhouse, less than three miles back, and that it would undoubtedly be running rapidly, in order to make up for its lost time. It does not appear how long defendants' locomotive had been halted at this unusual place when the collision occurred, but it was shown that the belated locomotive did not start from the roundhouse until 15 or 20 minutes after the other had departed, and it also appeared that immediately after the accident the dog was found tied in the caboose upon one of the yard tracks. Evidently the halt had been long enough to transfer the dog from the engine to the caboose.

The only warning given was that afforded by the single red light upon the rear of the tender, and that would not indicate whether the locomotive was in motion or standing still. With an unobstructed view of the track to the rear for half a mile, and a perfect opportunity to see the approaching headlight upon the other engine for that distance, at least, defendants' employees did not even take the precaution to guard against a rear-end collision by swinging a lantern,—a thing that could have been done immediately upon the stopping of their locomotive. They put out no signal and gave no warning of their dangerous act, and upon the trial offered no evidence to explain or rebut that produced by plaintiff. We are justified in holding that the proofs conclusively established defendants' negligence, and that the court below would have been warranted in so charging as a matter of law and irrespective of the

rules. Therefore the instruction in question was error without prejudice.

There are but one or two points made by counsel, in addition to those already discussed, which need consideration. If, as claimed, the engineer in charge of the locomotive on which plaintiff was firing ran it negligently,—that is, too rapidly,—and in disregard of some of the rules we have mentioned, his negligent conduct could not be imputed to plaintiff. The immediate proximate cause of plaintiff's injuries was the negligence of the men operating the head engine. Nor were the trainmen upon those two locomotives serving a common master, and therefore fellow servants. Although running over a terminal track, under rules put in force by the owner of such track, a third party, these men owed the duty of obeying these rules to their respective masters, not to the third party. A disobedience of the rules was a violation of the duty due from a servant to the party who employed him, and none of these men were in the employ or under the control of the terminal company.

We shall waste no time in discussing the contention of counsel for defendants that their clients cannot be held because the act producing the injury—stopping the engine to unload the dog—was wholly without the scope of the servants' authority.

The judgment is affirmed.