E. L. HART v. CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellant.

**Contributory Negligence:** JURY QUESTION.  In an action for injuries sustained by a collision with one of the defendant's street cars, the evidence disclosed that plaintiff was in a covered carriage;

that it reached a crossing, and waited for a car to pass; that the driver then tried to look at the track; that, by reason of the carriage curtains, he could not see a part of it and that, not seeing or hearing anything, he went on to the track, and was struck. It also tended to show that, had the customary signals been given, they would have been heard, and the accident averted; that, had the car been the customary distance behind the preceding car, the driver would have seen it when he looked and that, had the motorman used reasonable diligence after he discovered plaintiff's danger, he could have averted the injury. *Held*, to sustain a verdict for plaintiff.

**Charge and Issue:** INSTRUCTIONS CONSTRUED. The court, in an action to recover for injuries sustained by negligence of a street railroad company, in submitting the case to the jury, stated that the negligence complained of was "in the following particulars," followed by a statement of the allegations of all but two counts of the complaint; and later charged that the burden of proof was on plaintiff to prove, by a preponderance of the evidence, the negligence of defendant in some of the particulars charged in the petition. *Held*, that such instructions did not submit to the consideration of the jury the negligence alleged in the two omitted counts, because the jury undoubtedly took the issues from the charge and not from the petition.

SAME. In an action against a street railroad company to recover damages for a collision with one of its cars, an instruction "that if the defendant's employes operating the car failed to give timely warning of the approach of the car to a crossing as required by the rules of defendant, or as was necessary for the proper safety of vehicles crossing the tracks, and that in any of the respects referred to defendant's employes were not exercising ordinary care, then the verdict should be for plaintiff," is not erroneous, as substituting the rules of defendant as a test of negligence.

SAME. The language of an instruction must be considered in the light of the issues raised by the pleadings and evidence.

**Evidence:** HARMLESS ERROR: *Admitting rule of railroad.* In an action against a street railroad company to recover for injuries sustained by a collision with one of defendant's cars, it is harmless error, if error at all, to permit plaintiff to introduce in evidence a printed rule for conduct of motormen as to sounding gong at street crossings, where defendant's witness, without objection, testified to practically the same thing set forth by the rules.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

SATURDAY, OCTOBER 28, 1899.

ACTION at law to recover for personal injuries alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Charles A. Clark & Son* and *Rothrock & Grimm,* for appellant.

*Rickel & Crocker,* for appellee.

ROBINSON, C. J.—A street railway of the defendant is laid through a considerable portion of First avenue, in the city of Cedar Rapids. The avenue extends from the business part of the city, in a northeasterly direction, and is intersected at right angles by Fourteenth, Fifteenth, and other streets. The portion of the track between the streets specified is used by Central Park and Kenwood Park cars. On the 8th day of December, 1895, the plaintiff, her daughter, Mrs. Watts, and Rev. McCauley were riding in a carriage drawn by two horses, driven by C. F. Shurtliff. The team was being driven in a northeasterly direction on First avenue south of the street railway. At about the time the team reached Fifteenth street, a Central Park car passed, going in a northeasterly direction. The team was then turning to cross the railway, and when the carriage was on it a Kenwood Park car, approaching from the southwest, struck it, and Mrs. Hart and Mrs. Watts received serious injuries. Mrs. Watts assigned her claim for damages which accrued from the injuries thus received to the plaintiff, and she seeks to recover for the injuries received by both.

The defendant is alleged to have been negligent (1) in not giving notice of the approach of the Kenwood car by means of the proper signals; (2) in running the car at a high and dangerous rate of speed; (3) in running the car at a rate of speed exceeding six miles an hour, in violation of the ordi-

nances of the city; (4) in running the Kenwood car too near the Central Park car, and at a reckless and unreasonable rate of speed; (5) in not having the Kenwood car under proper control at and just prior to the time of the accident; (6) in not slowing down the car in time to prevent the injury; (7) in failing to keep a proper lookout for persons about to cross the street at or near the place of the accident; (8) in failing to slacken the speed of the Kenwood car after the peril of the occupants of the carriage was discovered; (9) in so placing its track at the place of the accident as to make it necessary for a team to cross it diagonally, and in permitting the rails to project above the surface of the street, in violation of the ordinances of the city.

I.   The plaintiff was permitted to introduce in evidence a rule of the defendant of which the following is a copy: "Rule 25. *Sounding Gongs.* The ringing of the gong is a danger signal. The gong should not be sounded unnecessarily. While it is to some extent a nuisance to people on residence streets, the gong should be used more at night than during the day. The motorman should *always* give two quick taps before starting the car. It should be struck on approaching each street intersection, beginning at least one hundred and fifty feet from the cross road, and at short intervals, until the street line is reached. At other times, the gong should be struck freely when necessary to warn teams and people on foot that the car is approaching. Never give a light or half tap. Strike hard enough to get the full sound." The defendant complains of the admission of the rule, and insists that it was intended by the defendant solely for the government of the employes; that it fixed an arbitrary standard for ordinary care; and that ordinary care might not have required the sounding of the gong as required by the rule. Testimony on the part of the plaintiff tends strongly to show that the gong was not sounded as required by the rule. In the case of *Burg v. Railway Co.*, 90 Iowa, 106, this court had occasion to consider a

rule of a railway company which was as follows: "All extra trains or engines and delayed regular trains must sound the whistle on approaching curves and obscure places, where the view is not clear for at least half a mile, and keep a sharp lookout for all work trains, sectionmen, and others who may be obstructing the track." We held that the rule could not be considered in ascertaining what duty, if any, the company owed to a trespasser, for the reason that the rule was designed to guard against such obstructions on the track as might arise from the conduct and management of the road, and not to obstructions which could not reasonably be anticipated. In the case of *Isaackson v. Railway Co.,* 27 Minn., 463 (77 N. W. Rep. 433), a rule of the defendant prescribing the duties of a motorman was considered, a copy of which was as follows: "He must keep a sharp lookout to avoid running into pedestrians and vehicles, especially at cross streets. While the car is in motion, the responsibility for safe running rests with him. He will never allow any unauthorized person (the conductor is not an authorized person) to use the handles. He will be held responsible for any damage arising from negligence on his part." It was said by the court that the rule required a higher degree of care on the part of the motorman than the law imposed upon the company; that there was no evidence tending to show any custom based upon the rule, nor that the plaintiff knew or relied upon it; and that the rule should not have been received in evidence. In the case of *Fonda v. Railway Co.,* 71 Minn. 438 (74 N. W. Rep. 166), the same court held that the rules of the company designed to regulate the conduct of its employes were not admissible in evidence against it, where the rules were unknown to the party who offered them, and did not influence him in what he did at the time the injuries in controversy were received. But such rules may be received where the person complaining of the conduct of the company had a right to rely upon them. Id.; *Smithson v. Railway Co.,* 71 Minn. 216 (73 N. W. Rep. 853). The case of *Beems*

*v. Railroad Co.,* 58 Iowa, 150, and Id., 67 Iowa, 435, was of that character. It involved the death of the plaintiff's intestate, who was a brakeman of the defendant. He had a right, in the discharge of his duties, to rely upon the observance by his co-employes of rules of the defendant intended for their guidance, of which he must have been presumed to have knowledge. The case of *Railway Co. v. Ward,* 135 Ill. 511 (26 N. E. Rep. 520), holds that such rules as that in controversy are admissible in evidence against the railway company. But, if the rules were erroneously admitted, it was not prejudicial, for the reason that, so far as applicable in this case, it only required that the gong be sounded one hundred and fifty feet from the crossing, and at short intervals, until the street line should be reached, and that the full sound of the gong should be given. Witnesses for the defendant testified, without objection, that "the rules require us to ring the bell about one hundred and fifty feet from the crossings," and that there had not been any additional rules since the time of the accident. That testimony was given before the rule was offered in evidence.

II. The defendant contends that the court erroneously submitted to the jury allegations of negligence in regard to which there was no evidence, as follows: (2) In running the car at a high and dangerous rate of speed; (3) in running it at a rate of speed exceeding six miles an hour, in violation of the ordinances of the city; (4) in running the Kenwood car too near the Central Park car; (5) in not having the Kenwood car under proper control at and prior to the time of the injury; (6) in not slowing down the car in time to prevent the injury; (9) in locating and constructing its tracks so as to require that they be crossed at right angles, and so that the rails projected above the surface. The court, in its charge to the jury, stated that "the alleged negligence on the part of said employes, which the plaintiff specifies in each count of her petition caused said collision and injuries sustained, is alleged to be in the

following particulars." Then follows a copy of the allegations of negligence set out in each count of the petition, excepting those numbered 3 and 9, which are wholly omitted. At the close of the statements respecting the negligence alleged was the following: "The foregoing, gentlemen, are the claims and allegations as made by the plaintiff in her petition as the basis of her action." We are of the opinion that there was evidence tending to sustain each allegation of negligence set out in the charge. But the court also charged the jury as follows: "You are instructed that the burden of proof is upon the plaintiff in this case to establish, by a preponderance of the evidence, the negligence of the defendant in some of the particulars charged in the petition, and that such negligence caused injury, either to the plaintiff, Mrs. Hart, or her daughter, Mrs. Watts, or both of them." It is said that the effect of this part of the charge was to submit to the jury all the allegations of negligence contained in the petition, but we do not think that is true, although the language of the paragraph quoted, considered apart from the remainder of the charge, is broad enough to sustain the claim. But the jury could not have understood that it was to ascertain what negligence was alleged from the petition rather than from the charge. The latter instructed the jury in regard to what negligence the petition alleged, and the jury must have understood that it was to be governed by the statements of the charge rather than the petition.

III.   The defendant complains of the fourth paragraph of the charge, which is as follows: "The basis of this action is 'negligence,' which is defined by the law to be the omitting to do something that a reasonably prudent person would do, or the doing of something that such person would not do. Under the circumstances of this case, and as applied to this case, if you find from the evidence that the defendant, by its employes, has omitted to do something that a reasonably prudent person would do, or has done something that such

person would not do, you would be warranted in finding that the defendant is guilty of negligence; and if you find that Mrs. Hart or Mrs. Watts, or the driver of the vehicle in question, have done something, or omitted to do something, which directly contributed to the collision and injury, then you will be warranted in finding such person or persons guilty of contributory negligence." "In relation to the care required of each party, you will only hold them to the exercise of ordinary care, which consists in doing everything which a person of ordinary care and prudence would do, and omitting to do everything which a person of like care and diligence would omit to do." The defendant criticises the definition of "negligence" contained in this paragraph on the ground that it does not express the thought that, to exercise ordinary care and prudence, one must do or omit to do what a person of ordinary care and prudence would do or omit to do under the same circumstances. See *Galloway v. Railway Co.,* 87 Iowa, 458. But an examination of the paragraph shows that what was said by way of definition was explained by other portions of the paragraph, which applied the definition to the facts in the case, and the jury could not have failed to understand that, to have been free from negligence, the parties referred to must have acted as a reasonably prudent person would have done under the same circumstances, and the definition, if technically defective, could not have been prejudicial. We are not to be understood, however, as holding that a definition of negligence, to be complete and correct in itself, should include the statement for which the defendant contends. See *Little v. McGuire,* 43 Iowa, 447; *Rusch v. City of Davenport,* 6 Iowa, 443, 454.

IV. The defendant complains of the fifth paragraph of the charge to the jury on several grounds. The paragraph is as follows: "If you find from the evidence that the employes of the defendant, operating the car which caused the injury, were running said car too near to the Central Park Car 'for safety, and in an unusual

manner, or that defendant's employes operating said car were operating the same at an unsafe rate of speed, and not under reasonable control, or if the said defendant's said employes operating the same failed to give timely signals or warning of the approach of said car to said crossing, as required by the rules of the defendant company, or as was necessary for the proper safety of vehicles passing upon or crossing the avenue, and that in any of the respects referred to the said defendant's said employe or employes were not exercising ordinary care, and that such want of ordinary care on the part of said employe or employes caused said collision, without any negligence upon the part of the driver of said vehicle or plaintiff or said Mrs. Watts directly contributing thereto, and that by reason of said collision injury was caused, either to the person of the plaintiff or the said Mrs. Watts, then your verdict should be for the plaintiff."

The first objection urged to this portion of the charge is that it made the failure of the employe who operated the car at the time of the collision to give signals as required by the rules of the defendant, negligence. We do not think that is a fair interpretation of the paragraph. On the contrary, it required the jury to determine whether the failure to give the signals as required by the rules was a failure to exercise ordinary care. The next objection to the portion of the charge quoted is that it told the jury, in effect, that it would be negligence to operate the car in an "unusual manner." It is true, as claimed, that the car might have been run in an unusual manner without negligence, as by running it slower, and further from the Central Park car than usual. But the charge must be construed as applied to the issues presented by the pleadings and tried, and the "unusual manner" which the plaintiff alleged and tried to prove was that the car was run at a higher rate of speed, and nearer the car which immediately preceded it, than was usual, without the customary signals, and without being completely controlled by the motorman.

As applied to the facts of the case, the portion of the charge objected to was correct, and was within the issues tendered by the pleadings.

V. The defendant complains of certain rulings of the superior court on the admission of evidence, and of its refusal to give certain instructions to the jury which were asked. We do not find any error in any of these matters to which our attention has been directed.

It is said a verdict for the defendant should have been directed. There was not such a lack of evidence to sustain the material averments of the petition as would authorize us to award a new trial on that ground. The most that can be said is that the jury might well have found for the defendant. There is much ground for the claim made by it that the plaintiff, her daughter, and the driver were guilty of contributory negligence. There was nothing to prevent the occupants of the carriage from seeing the approach of the Kenwood car excepting the carriage top and the curtains. Had they looked outside the curtains, and in the proper direction, the car would have been discovered.

But there is testimony which tends to show that the team reached the crossing at Fifteenth street at about the time the Central Park car passed; that the horses were stopped for that, when they were four or five feet from the track; that, before starting the team to cross, Shurtliff, who sat at the southeast end of the front seat of the carriage, rose from his seat, and looked out and backward, on the southeast side of the carriage; that the carriage top obstructed his view of the track from the crossing in a southwesterly direction for a distance of one hundred and fifty feet; that, not seeing anything on the track beyond that distance, he drove onto the track, with the result stated; that, had the customary signals been given, they would have been heard, and the accident would have been avoided; that, had the Kenwood car been at the customary distance from the Central Park car, it would have been seen by Shurtliff; and that, had the motorman used

reasonable diligence to stop his car after the peril of the occupants of the carriage was known to him, the collision would have been averted. We cannot say, in view of all the evidence, that the verdict was unauthorized. The record does not disclose any reversible error, and the judgment of the superior court is AFFIRMED.