ing church, and participate in or witness good, elevating, healthy. physical exercise, than to be driven instead to go to dance gardens, drinking places, pool rooms and worse places; and there is no one trying to stir up any obscure or obsolete statute against that opinion except those who rule the police. Fathers and mothers would much rather know that their grown sons are at a ball or golf game on Sunday afternoon than not know where they are. Many of our boys and young men scarcely see the sun at all during the short days of the year except on Sundays, and have no other day for outdoor exercise from one end of the year to the other. This is something which our ministers of the gospel well know, and the significance of which they fully appreciate.

There are many minor offenses which should be left for redress to the coming forward of private accusers before the magistrates or other authorities, as our laws and the procedure of our courts contemplate. The accusatory method of enforcing the criminal laws is open to every citizen. The community can take care of itself in such matters without any police meddling. Base ball and golf, and other innocent and healthy games, are being played, everywhere outside of the city on Sunday without being meddled with by constables or policemen. Such meddling is practically unknown except in this city, where, of all places, we should have humane, sensible and intelligent government. The general sentiment of the community has to be consulted in respect of the enforcement of certain laws, and always has been in the Anglo-Saxon world as well as elsewhere, until recently in the city of New York. It is a maxim of the law that you cannot indict a whole community. The Anglo-Saxon sheds statutes which grow obsolete and obnoxious the same as a snake sheds his skin. He has seldom bothered to repeal them, as every one acquainted with the history of laws very well knows. No citizen any longer makes a complaint under them, and thus they become dead letter laws. It is not the business of the police to revive them. They are not employed and paid by the citizens for any such purpose.

The relators are discharged.

---

(43 Misc. Rep. 535.)

### EARLE v. CLYDE S. S. CO.

(Supreme Court, Trial Term, New York County. May, 1904.)

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—EVIDENCE—SUF-
   FICIENCY.
   In an action by a servant against the master for injuries alleged to have been caused by negligence of the master in not furnishing lights, so as to enable the servant to see that the hatchway in the ship, which he was helping to load, was open, evidence considered, and *held* to support a jury finding that defendant was guilty of negligence.

Action by Julia Earle, as administratrix, against the Clyde Steamship Company. On motion to set aside a verdict for plaintiff. Motion denied.

S. L. Samuels, for plaintiff.
George Gordon Battle, for defendant.

GILDERSLEEVE, J.   This is a motion to set aside the verdict of a jury in favor of the plaintiff.   The ground of the motion is that the accident to the plaintiff's intestate was caused solely by the act of a fellow servant, and that no negligence on the part of defendant has been shown.   The evidence of the plaintiff's witnesses, which the jury was at liberty to believe, shows substantially the following state of facts, viz.:   The plaintiff's intestate was employed by the defendant in unloading a steamship belonging to said defendant, and was killed by falling through the middle hatchway on the lower deck into the hold of the vessel between 3 and 4 o'clock in the morning.   About two hours before the accident said intestate had been working on this deck.   At that time the hatchway was open for the purpose of taking cargo out of the hold.   One Goff, the defendant's stevedore, who was in charge of the vessel, then ordered the hatchway to be closed; and the said intestate assisted in placing the hatches on top of the hatchway, completely covering it.   The intestate was then sent to the upper deck to assist in unloading another part of the cargo.   While he was gone, a servant of the defendant, who was one of the gang working on the lower deck about this hatchway—a man named Donovan—directed one of the hatches covering this hatchway to be taken off and placed upon another hatch, so as to make a step for the men who were unloading the lumber which was on this deck.   Immediately in front of the hatchway thus exposed was a pile of lumber, about five feet high, the top of which projected somewhat over the hatchway thus open.   There were two gangs working upon this lower deck, unloading lumber therefrom—one working inshore, and the other working offshore.   These two gangs were each provided with a lamp.   One of the lamps was used in the wing of the ship, and was placed in such a position, for the benefit of the gang working there, that it threw no light whatever upon the hatchway.   It was a poor lamp, at best, and gave but little light.   The other lamp was placed upon the pile of lumber in front of the hatch. This lamp gave also a very feeble light.   The pile of lumber on which the lamp stood seems to have cast a shadow over the open hatchway, so that this hatchway was in the dark, and the fact that it was open was not apparent to any one who was not already aware of that fact.   When plaintiff's intestate had finished his work on the upper deck, he was sent back to assist upon the lower deck in unloading the lumber.   He and one Doyle each took hold of a bundle of lumber several feet long. Doyle took the forward end, and the said intestate took the hinder end. Doyle carried his end to the hatchway, and raised it toward the deck above, and then the deceased hoisted the bundle so that those above could catch the lumber and pull it up.   After they had thus carried one or two loads, Doyle suddenly felt the lumber pulled out of his grasp, and, looking around, he saw that the said intestate had disappeared, and the lumber with him.   It was soon ascertained that he had fallen through the open hatchway, and thus met his death.

Under the evidence presented at the trial, it appears that the opening of the hatchway, which was the immediate cause of the death of the plaintiff's intestate, was the act of a co-servant of said intestate.   The question for the jury to determine was whether the accident was due to the concurring negligence of this fellow servant and of the defend-

ant. Was the defendant negligent in omitting to provide proper light, which would have enabled the plaintiff's intestate to see that the cover had been removed? If there was sufficient evidence to sustain a finding of such concurring negligence, the jury were warranted in giving their verdict for plaintiff against the said defendant; assuming, of course, that the proofs cleared plaintiff's intestate of the imputation of contributory negligence. See Coppins v. N. Y. C. & H. R. R. Co., 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523.

The testimony shows that when Goff, who was the alter ego of the defendant, left hatchway No. 2, where the accident occurred, the cover was in its place, and the locality was then reasonably safe, even though it were dimly lighted. Subsequently to the departure of Goff, and without any order from him, so far as appears, the man Donovan opened the hatchway, and left it uncovered. Assuming that Goff did not know that the cover was going to be removed, but presumed the place would remain as safe as when he left it, still it is claimed that he should have foreseen the possibility that this cover might be removed, and the hatchway left open, and should have furnished sufficient light to have enabled the said intestate to avoid the accident by the exercise of ordinary care. The latter had assisted in putting the cover on the hatchway before he was ordered to the upper deck, and he had no reason to suppose, so far as appears, that it had been opened again during his absence. Some one representing the defendant ordered him to go back to work on the lower deck after the hatchway had been opened again, and, owing to the imperfect light, it may reasonably be said he failed to see the danger, and fell through the hatchway, thus meeting his death.

It is urged that extra lamps could have been had in a neighboring shed for the asking, and that plaintiff's intestate should not have continued to work in the dim light. But there is no positive proof that the plaintiff's intestate had actual or constructive knowledge of this fact. He seems to have been recently engaged by the defendant, and, though the other employés, of longer date, may have been aware of the accessibility of more lamps, there does not appear to be any warrant for imputing their knowledge to the said intestate. It is undoubtedly true that when the master has supplied suitable materials and appliances available to the use of the employés in the service, and for their protection, the failure to employ them is their fault, not his, provided always, however, that they are advised of the fact, or suitable regulations are provided for its application. Tully v. N. Y. & Texas S. S. Co., 10 App. Div. 466, 42 N. Y. Supp. 29, affirmed, without opinion, 162 N. Y. 614, 57 N. E. 1127. In the case at bar there is apparently no affirmative proof of knowledge on the part of the intestate, or that there were suitable regulations, or even that the extra lamps in the shed were serviceable and free from the defects attributed to the lamps that were in use at the time of the accident, which, according to the witnesses for plaintiff, were defective appliances, inasmuch as they were not provided with handles so that they could be put in a proper place to give the requisite light in the dangerous locality in question. In this respect the facts in the case at bar differ from those in the case of Madigan v. Oceanic Steam Navigation Co., 178 N. Y. 242, 70 N. E. 785, where the Court of Appeals held that an employer is not liable for in-

jury to his servant caused by the neglect of a foreman to perform a mere detail of the work in which they were all engaged, although it was the foreman's duty to look after it. In that case the servant was working in the hold of a vessel, and continued there until it was quite dark, and was injured through neglect of the foreman to light lamps which the master had provided, and which it was his duty to look after, they being, with respect to such detail of the work, co-servants, and the master was not liable for the injury. The court said:

"It was not disputed that the defendant had provided lamps sufficient and quite available to the foreman for the men's use. They were in sheds on the wharf, and also upon the steamship; and, if they were not used upon this occasion, it was simply because, in the foreman's judgment, they were not required. * * * Here the defendant provided a supply of lamps for its servants, and they could and should have taken and used them when they were required. To get them was a mere detail of the work, which it was the foreman's duty, as one of a number of servants engaged in a common task, to execute."

Defendant in the case at bar should have affirmatively shown that proper lamps were at the disposal of the intestate, and that he had actual or constructive knowledge of that fact, if it desired to rely on the claim that it had done its duty in the matter of furnishing lamps. See Tully v. N. Y. & T. S. S. Co., supra. In the last-cited case the court said:

"It does not appear that the defendant had, by any rules or regulations whatever, required or directed the agents to advise workmen temporarily employed to work upon the steamships, in loading and unloading, of any precautionary means which it might, for their safety, be or become desirable to use. For this reason, we think that the question whether the defendant was chargeable with negligence was for the jury, and whether or not the plaintiff established by the evidence his freedom from contributory negligence was also one of fact for the jury."

In that case there were lanterns furnished by the defendant, which could have been obtained in a building on the dock near the ship; but it did not appear that plaintiff, who had little experience as a longshoreman, knew of that fact, or of the locality of the uncovered hatchway. In the case at bar the intestate did know of the existence of the hatchway, it is true, but, as we have seen, he himself assisted in covering this hatchway; and he does not appear to have had any reason for supposing that it had been reopened during his absence on the upper deck, and he may be presumed to have relied upon his personal knowledge that it had been covered under the direction of Goff himself, and supposed that it continued to be so covered. Moreover, it may be suggested that, if the intestate had good reason for believing that the hatchway was closed, he was warranted in supposing that the place was reasonably safe without additional light. Furthermore, it will be remembered that, although the hatchway was opened by Donovan, or under his direction, still it was so opened in the course of defendant's business, and by defendant's servant. The reason for such opening of the hatchway has already been stated above.

It seems to me that there was sufficient evidence to warrant the jury in holding defendant guilty of concurring negligence, and the intestate free from contributory negligence. I am unwilling, therefore, to disturb their verdict.

Motion denied.