(10 App. Div. 463.)
## TULLY v. NEW YORK & TEXAS S. S. CO.
(Supreme Court, Appellate Division, Second Department.    December 1, 1896.)

1. MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY.
   Negligence and contributory negligence are questions for the jury where an inexperienced man, who was employed to assist in loading a vessel, but given no instruction concerning the work, fell, on the first day of his employment, through an open, unguarded, and unlighted hatchway on the lower deck, and defendant had lanterns on the dock, and materials to cover the hatchway near them, which were available for use by the employé.

2. DAMAGES—WHEN EXCESSIVE.
   A verdict for $25,000 for loss of a leg is excessive where plaintiff had no established business, but earned, from such employment as he could obtain, about $12 per week, though he suffered great pain by reason of his injury.

Appeal from trial term, Kings county.

Action by Michael Tully against New York & Texas Steamship Company for personal injuries.    From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.    Modified.

Argued before BROWN, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

Tallmadge W. Foster, Thomas B. Hewitt, and George S. Coleman, for appellant.

Charles W. Brooks and Edwin R. Leavitt, for respondent.

BRADLEY, J.    The plaintiff sustained a physical injury on the defendant's steamship Lampasas, lying at her pier in East river, city of New York, on May 25, 1894.    It was a three-deck ship.    The plaintiff was employed as longshoreman by the defendant, to assist in loading and stowing a cargo on the vessel.    He went to work there in the morning, and in the afternoon he was engaged in the hold, below the main hatch, until about 5 o'clock, when, being directed by the foreman to come on to the lower deck, and go to the forward hatch, and stow freight there, he proceeded to go there, and stepped into that hatchway, fell into the hold, and was seriously injured.    He alleges that his injury was occasioned by the negligence of the defendant.    This charge is not founded upon any defect in the construction of the vessel, or upon any want of competency of the foreman under whose direction he was performing service; but he does claim that the defendant failed to use reasonable care to render safe the place where he was directed by the foreman to go to work on the ship.    The causes of the danger and the consequence were darkness and the open hatchway.    If either had not existed, it may be assumed the accident would not have occurred.    This darkness on the lower deck was produced by covering the main and forward hatchways on the deck or decks above it; and the reason for doing it was rain, and to protect the goods on board from getting wet.    The plaintiff says he did not know the hatchway was open, and that he could not see it by reason of the darkness.    His testimony is that he never before that day had worked inside a ship; that his work before then about the

defendant's steamships was in trucking freight to and from the dock in unloading and loading cargoes. In doing that, he had previously worked in April and May some number of hours each of 18 days, making together about 116 hours. While he was in some sense a green hand at the service in the ship at the time of his injury, it is fair to assume that he knew something of the location of the hatchways in the lower deck, although he may not have known of the habit of leaving them open when not in actual use for the reception of freight, or that there was no guard about them at such times.

The principles governing the relative rights and duties of employer and employé, and those upon which the liability of the former to the latter upon the charge of negligence are dependent, are so well established that it is unnecessary at any length to state them here. The difficulty lies in the application of them to the facts of a particular case. When the plaintiff went to work for the defendant, he assumed the ordinary hazards incident to the service, which hazards included those arising from the negligence of his co-employés, and the obvious conditions of danger. The defendant, not insuring his exemption from danger from any cause, undertook that the place of service should not, by any want of reasonable care on its part, be or become unsafe, and that such care should be used to supply him with safe and suitable implements and appliances for the performance of the service. The Lampasas was 350 feet in length. The ports which opened into the lower deck were between the main and forward hatches, nearly 17 feet from the latter, and were 5 feet high, and 6 feet 8 inches wide. The size of the forward hatchway was 10 feet square. There was no artificial light there at the time in question, and the darkness at the place where the forward hatch was indicated that the ports were not effectual to give light to that part of deck in the daytime. There were no stanchions and no guards about the hatchway. It would seem, therefore, desirable for safety to have artificial light there when dark, if the hatchway remained uncovered. But it is said that it was the fault of the employés that no artificial light was there, if necessary, as the defendant had supplied plenty of lamps and lanterns, which were in a building on the dock near the ship, and that the men at work might have obtained as many as were necessary for the purpose; and there is some evidence on the part of the defendant to the effect that the materials used for covering the hatchway were near to it. Thereupon is invoked the principle that, when the master has supplied suitable materials and appliances available to the use of the employés in the service and for their protection, the failure to employ them is their fault, not his. Such, undoubtedly, is the rule if they are advised of the fact, or if suitable regulations are provided for its application. Filbert v. Canal Co., 121 N. Y. 207, 23 N. E. 1104; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952. The latter fact appears only by the testimony of witnesses having responsible positions in the service of the defendant. And it does not appear that the fact that lamps

or lanterns were kept on the dock for the employés was known to the plaintiff, or that the existence or situation of the covering for the hatchway was known to the employés who constituted the "gang of workmen," so called; and the foreman testified that he could not tell where the hatches (covering) for this hatchway then were, because they were off the night before, but that it was usual to put them alongside the hatchway or abaft of it, between stanchions, wherever there is a handy place to put them on again. He designates the men at work as a "green gang," and that he supposed "they did not know enough to go for lights themselves." The foreman was in a situation where he could have seen that it was dark forward when he directed the plaintiff to go there; but he must be deemed to have been a co-employé, and his fault, if such, in that respect, does not aid the plaintiff. Loughlin v. State, 105 N. Y. 159, 11 N. E. 371.

The urgent suggestion of the defendant's counsel that the situation which gave the danger, such as it was, arose in the course of and was produced in the process of the service in which the employés were engaged, is not tenable. It was caused by putting the covers on the hatchways. This was done to protect the cargo within the ship. It was not produced by the performance of the work in which the employés were engaged, or to subserve the purposes of their service. In the direction to do that, the foreman represented the defendant.

The most available proposition, that no negligence was imputable to the defendant, is that it had provided for the use of the employés all the means essential to their protection. If this were so, in the full sense of the term, that charge against it cannot be supported. The evidence on the part of the defendant is that, while engaged in putting a cargo aboard the ship, the hatchways are left open, although some of them are not constantly in use; and that this is necessarily so, because portions of the freight are from time to time arriving at the dock, and it, consisting of different kinds of goods, is so classified that some of them are to be lowered through the different hatchways during the entire process of loading, and consequently it cannot be known how soon the use of any one of them may be required. This method of facilitating the loading of a ship with freight is reasonably businesslike, and apparently not subject to criticism. But the further question is whether the defendant, by furnishing upon the dock lamps and lanterns available to the employés, and having materials to cover the hatchways in the lower deck near them, which the employés may be permitted also to place over them, has done all that reasonable care requires of the defendant to give safety to the place in which the service of the workmen may be required.

There is evidence tending to prove that, when a vessel arrives at the dock, men appearing about there are employed to take off the cargo, and to reload it with freight, and that they may have had no experience in the work they are called upon to perform in that service. They, unadvised, may not know of the facilities which can

be afforded them when circumstances render their use and applica-
tion desirable for safety. Conditions like that which caused
the failure of the plaintiff to avoid the danger which he encoun-
tered, it may be assumed, are liable to arise, and be produced in
like manner. It would therefore seem to be reasonably incumbent
upon the defendant to have some system by way of rules or regula-
tions. The availability of protective means and appliances to the
workmen is not necessarily of any benefit to them, unless they are
advised of it. It may be that, if the defendant had provided rules
which required those in charge of the work to advise the workmen
of the precautionary means of protection which could be had, the
plaintiff's misfortune might not have occurred. When the master
has furnished, to be observed by those having the management of
his business, such rules as may be reasonably essential to the safety
of his employés in any emergency or condition which may be ap-
prehended in the service, he has discharged his duty to them in
that respect, and they assume the hazard of the observance of the
regulations by those with whom the duty rests to execute them.
Abel v. President, etc., 103 N. Y. 581, 9 N. E. 325; Id., 128 N. Y.
662, 28 N. E. 663; McGovern v. Railroad Co., 123 N. Y. 281, 25 N. E.
373; Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466; East-
wood v. Mining Co., 86 Hun, 91, 34 N. Y. Supp. 196. It does not
appear that the defendant had, by any rules or regulations what-
ever, required or directed the agents to advise workmen tempo-
rarily employed to work upon the steamships, in loading and un-
loading, of any precautionary means which it might for their safety
be or become desirable to use. For this reason, we think the ques-
tion whether the defendant was chargeable with negligence was
for the jury; and whether or not the plaintiff established by the
evidence his freedom from contributory negligence was also one
of fact for the jury. His evidence was to the effect that he did not
know of any custom of having the hatchway open when not in use;
that this was the first day he had worked stowing freight on a
ship; that he was not acquainted with ships, had not been near
the forward hatch that day, and that he thought it was closed; that
he was directed by the foreman to go forward, without receiving
any cautionary remarks from him, although it was dark there. The
inference is warranted that it was so dark as to render it dangerous
for a person unacquainted with the situation, as it was there, to go
from the main hatch to the forward part of the lower deck. The
conclusion is warranted that the plaintiff received and followed the
direction of his foreman in ignorance of the danger he encountered.

The verdict was for $25,000. It is insisted on the part of the
defendant that this was excessive, and we are inclined to think it
is so. The plaintiff had no established business, nor any regularly
stated employment. He was at the time of the age of 28 years,
presumably in good health and strong, had been employed in va-
rious kinds of labor, and was dependent for his earnings upon such
employment as he could obtain. He puts his wages received at
about $12 per week. It is true, he suffered much from the injury,

which resulted in the amputation of one of his legs; and although it is difficult to find a measure for pain in pecuniary consideration, as none would be an acceptable inducement to suffer it, yet, when it has occurred, the measure of compensation, simply as such, must be considered upon a reasonable basis of estimate.

The view taken of the case leads to the conclusion that the judgment and order should be reversed, and a new trial granted, costs to abide the event, unless the plaintiff stipulates to reduce the recovery of damages to $15,000, and in that event the judgment be so modified, and, as modified, affirmed, without costs of this appeal to either party.    All concur.