(33 App. Div. 324.)

O'KEEFE v. EIGHTH AVE. R. CO.

(Supreme Court, Appellate Division, First Department.    October 7, 1898.)

1. TRIAL—TESTIMONY IN REBUTTAL.
    In an action for injuries, wherein plaintiff claimed that the injuries were caused by a collision with defendant's street car, a witness for defendant testified that he was with plaintiff constantly during a certain period immediately following the accident, and heard all that he said, and that during such time he said nothing about such collision. *Held*, that the testimony of another witness that plaintiff told him during such period that he was injured by such collision was admissible in rebuttal.

2. STREET RAILROADS—OPERATION—RULES AS TO SPEED.
    Evidence of rules of a street-railroad company as to the duty of drivers of its cars with respect to the rate of speed in rounding curves is inadmissible in its favor in an action against it for injuries to a third person caused by the negligent driving of a car around a curve, since they could in no way be binding on plaintiff.

3. SAME.
    Nor was evidence of such rules material or relevant, in answer to the charge that the car in question had been driven around the curve in a careless manner and at a high rate of speed, for the purpose of showing that the rules of the company forbid such management while rounding a curve.

4. DAMAGES—LOSS OF ARM.
    A verdict of $8,000 for the loss of the use of a right arm by one 25 years of age was not excessive, though plaintiff, who was a truckman at the time of the accident, thereafter earned as much, as a bookkeeper, as he had formerly earned.

    McLaughlin, J., dissenting.

Appeal from trial term.

Action by Michael E. O'Keefe against the Eighth Avenue Railroad Company. From a judgment entered on a verdict, and an order denying a motion for new trial, defendant appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and McLAUGHLIN, JJ.

John M. Scribner, for appellant.

Charles J. Patterson, for respondent.

O'BRIEN, J.    The plaintiff sought to recover damages for the fracture and permanent injury of his right arm, which was run over by one of the wheels of a heavily loaded truck, which the plaintiff himself was driving easterly on the southerly side of Canal street, near West Broadway, on September 11, 1893.    The claim is that the plaintiff was violently thrown from his truck in consequence of a collision with one of the defendant's street cars, which was negligently driven around a curve.    The plaintiff's testimony was that, as he approached the curve where the defendant's cars turn from Canal street into West Broadway, he noticed one of the cars coming behind, the heads of the horses being then about even with the tail end of the truck, and that the horses traveled eight or ten miles an hour. The heads of the truck horses, according to the plaintiff, were then over the curved track.    The car driver struck his horses with his whip, and the plaintiff swung his horses to the right, so that they should not be injured.    As he swung the horses, the wheel of the

truck inclined towards the track, and the car, going around at a rapid rate of speed, hit the hub of the truck, and produced a sudden jerk, which threw the plaintiff off. The plaintiff is supported by a witness named Cronin, who was his intimate friend and companion, and who on that day had been on the truck, and ridden part of the way with him, but had gotten off, and, as he testifies, followed the truck, and witnessed the accident, which he described, and which, with some variations, affirmed the plaintiff's version of how the accident happened.

On the part of the defendant there were two witnesses, police officers, who were standing together talking on the north side of Canal street. One of them states that he had his attention attracted to the truck, and that he saw the plaintiff fall off, and that there was then no car anywhere near him. He is in effect corroborated by the other policeman, who, while he did not see the plaintiff actually fall off, had his attention drawn to the fact that he had fallen, and went to assist the other officer, Frank; and together they took the plaintiff from the street where he was lying, to the north side of Canal street, from which place he was subsequently removed to the hospital. These officers testify that, when the plaintiff was interrogated as to the cause of the accident, he made no mention of having been run into by a car. The first knowledge that the defendant had of the plaintiff's claim was when it was served with the summons and complaint, more than 10 months after the accident. The defendant's theory is, in effect, that the story of the plaintiff was made out of whole cloth; that the idea of holding the defendant was an afterthought; and that the testimony, not alone of the plaintiff, but particularly of the witness Cronin, is not only contradictory, but incredible. If it depended alone on these two witnesses, as against the two officers, there would be considerable force in this contention. But there was another witness, Donnelly, who was the superintendent of the trucking department, or boss truckman, for Leggatt & Co., for whom the plaintiff worked, and who was sent for immediately after the accident. He was asked, with reference to the time when the plaintiff was lying on the north side of Canal street, partly or wholly unconscious, and after he had given him a drink of whisky to strengthen him, which seems to have brought around consciousness, whether the plaintiff then made any statement about the cause of the accident, or made any claim against the railroad company. This testimony was given on rebuttal; and, as it was favorable to the plaintiff, it unquestionably had a controlling effect, as can be seen from the facts already recited, on the verdict of the jury; and its reception presents the main question relied upon on this appeal. This witness was allowed, in rebuttal, to testify, over the defendant's objection, that the plaintiff said he was knocked off his truck by an Eighth avenue car. The court also allowed the plaintiff himself to testify in rebuttal that he told Donnelly he had been knocked off the truck by the Eighth avenue car.

The general rule of law is that admissions in one's own favor are inadmissible. To this general rule there are exceptions. Admissions constituting part of the res gestæ—that is, statements which

are coincident in point of time with the accident—have in certain cases been allowed; and, where part of a conversation or statement of a person is given upon one side, it is permissible to allow the other side to give testimony as to the whole conversation. The appellant here insists, however, that the declarations were in no way related to any conversation that had been inquired into, but were separate and independent statements, made in a conversation between Donnelly and the plaintiff, and were not the same as testified to by the police officers. The respondent, recognizing the general rule, concedes that such a declaration of the plaintiff, or testimony thereof by the witness Donnelly, would not be competent at the outset; but the ruling made by the court below in admitting it, it is contended, was justified, because the defendant, in the endeavor to show that no collision had occurred between the car and the plaintiff's truck, brought out by the testimony of Frank, the police officer, that the plaintiff did not say anything about such collision while waiting for the ambulance. This witness said that he was with the plaintiff from the moment that he fell from the truck until he was taken away in the ambulance, and that he was with him at all times when Donnelly was with the plaintiff, and that the plaintiff did not say anything about such a collision. The defendant realized the importance of showing this, and introduced that subject, and it was a strong corroboration of the claim that no such occurrence as was testified to by the plaintiff took place. It was equally important to the plaintiff to show that what Frank had testified to was not true. In view of the importance, therefore, of the ruling to both parties, we think it proper, even at the risk of repetition, to detail the order, extent, and character of Frank's testimony, and the bearing of that given by the plaintiff and the superintendent, Donnelly.

If it had been a separate and independent conversation between the plaintiff and Donnelly, in no way related to the witness Frank, then it would have been incompetent. The latter had testified that, though spoken to on the subject of the cause of the accident, the plaintiff had made no mention of his truck having been struck by a car. This might have been entirely true, even though the plaintiff had made such a statement to Donnelly; for it might have been made in the absence of Frank, and would not therefore be competent as showing that what Frank had testified to was untrue. The question, therefore, presented, is whether the testimony of the plaintiff and Donnelly was or was not related to the testimony given by Frank. On that subject we have the latter's direct examination, in which he says that the plaintiff did not at any time, either on the spot where he fell when he was picked up, or on the sidewalk before he was taken away in the ambulance, make any mention of a car or a collision with a car. On recross-examination, when asked if he was with the plaintiff from the moment he fell from the truck until the time he was taken away in the ambulance, which concededly covered the same time as the conversation subsequently testified to by the plaintiff and Donnelly as having taken place between them, he gave the following answers: "Yes, sir; I was with him at all times when the superintendent [meaning Donnelly] was with him. I did not hear

the superintendent ask me how the accident happened.    I was by his side at all times.    I heard all he said.    I heard all he said to the superintendent."    And to the question, "Do you swear he did not say to the superintendent that an Eighth avenue car struck his truck, and knocked him off?" the witness answered, "Yes."    "Q. You have testi-- fied on your direct that he made no claim of having been knocked off by a car.    A. Yes, sir, by a car; I swear to that positively.    Q. Did he say he was knocked off by anything else?    A. No, sir."    That Frank intended to be understood as saying that the plaintiff had made no mention either to him or Donnelly of his truck having been struck by a car is further evidenced by his testimony in surrebuttal, when he was asked whether he had heard the testimony of Donnelly, the super- intendent, in which the latter had testified that, in answer to his question as to how the accident occurred, the plaintiff said he had been struck and knocked from his truck by an Eighth avenue car; to which Frank replied that Donnelly asked the plaintiff in his pres- ence no such question, that he was there when Donnelly reached the spot, and that Donnelly did not say anything to the plaintiff, nor the plaintiff to Donnelly.    Our conclusion, therefore, is that the testi- mony was competent, and the ruling right.

The other exceptions are not fatal to the judgment; for it will be seen that with that evidence in, and Donnelly's in support of the plaintiff and Cronin, as against the two officers, there was not a pre- ponderance in favor of the defendant's version, nor was the verdict rendered against the weight of evidence.    The refusal of the court to admit in evidence the rules of the company as to the duty of the driver with respect to the rate of speed in rounding curves was proper, be- cause in no way could they be binding upon the plaintiff; nor was it material or relevant, in answer to the charge that the car in this in- stance had gone around in a careless manner and at a high rate of speed, to show that the rules of the company forbid such management of the car while rounding a curve.

Considering the nature of the injuries, although the amount award- ed was large, it cannot be regarded as excessive.    It is true that the plaintiff is now earning, as a bookkeeper, as much as he formerly earned as a truckman; but it is shown that he has lost the use of his right arm, and that it was subsequent to the accident that he learned to write with his left hand, and was thus enabled to earn a livelihood. Considering his age, which at the time of the accident was about 25, and the probability of the duration of life, it cannot be said that the loss of the use of his right arm, and the suffering which was entailed as a result of the injury, were excessively compensated for by the ver- dict of $8,000.

This leaves for consideration the charge of the judge.    The appel- lant claims that the court erred in refusing to charge the eighth, twelfth, and twentieth propositions submitted on behalf of the de- fendant.    We have examined these, and fail to find any error in the rulings made that would call for a reversal.    The learned trial judge, after presenting to the jury a statement of the issues, and what it was incumbent upon the plaintiff to prove, and reciting the general rules of law applicable to cases of negligence, took the 21 requests

presented by the defendant, and submitted 18 of them to the jury as part of his charge; and this, with his introduction of the subject of the accident, as stated, was practically his entire charge to the jury. The charge was in every way favorable to the defendant, whose legal rights were fully protected and guarded; and no reversible error was committed in the refusal to charge the three remaining requests.

Without further discussing the remaining questions raised, our conclusion is, upon this record, that the case was fully and fairly tried, and upon the main question properly submitted to the jury, upon conflicting evidence; and with the verdict reached, fixing upon the defendant liability for the injuries sustained, and the amount of damages, we should not interfere.

The judgment, accordingly, should be affirmed, with costs. All concur, except McLAUGHLIN, J., dissenting.