KORZIB v. NETHERLANDS–AMERICAN STEAM NAVIGATION CO.

(District Court, S. D. New York. February 3, 1910.)

(*Syllabus by the Judge.*)

DAMAGES (§ 132*)—PERSONAL INJURY—LOSS OF EYE.

Exceptions to commissioner's report allowing libellant $7,500 for the loss of her right eye. A claim on the part of the respondent that the damages were excessive and should be reduced to $2,500, not sustained and the report confirmed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

In Admiralty. Action by Eufrazia Korzib against the Netherlands-American Steam Navigation Company. Exceptions overruled, and report confirmed.

A. Leonard Brougham, for libellant.
Wing, Putnam & Burlingham, for respondent.

---

ADAMS, District Judge. This action to recover for personal injuries was decided in favor of the libellant (169 Fed. 917) and the question of the amount of damages sent to a commissioner for report. The report has now come in as follows:

"The sight of libellant's right eye was destroyed June 29, 1907, under circumstances set forth in the decision of the court (169 Fed. 917), when she was a passenger on one of the respondent's steamships, from Rotterdam to New York. She was in her 17th year, and was an emigrant from Russian Poland, coming to this country with the intention of becoming a domestic servant. Her father lives in her native country, and her only relative here is an aunt with whom she has lived in New York City since leaving the hospital on Ellis Island, where she stayed about six weeks after the arrival of the ship. She was in the ship's hospital from the day after the injury until the ship arrived here, receiving daily treatment from the ship's doctor. When she went out to walk aboard ship, after the injury, she was accompanied by a man who led her. She says that blood flowed from her eye when it was struck by the nozzle of the teapot, that she suffered severe pain, that this pain continued until some time after she had left Ellis Island, and that she had but little sleep in the early days of the injury. Soon after leaving Ellis Island, she called at a dispensary, her eyes were examined there, she was told that the injured eye would never recover its sight, and was advised to have it removed and an artificial one put in; but she has not had this done, because, she says, she is afraid of the pain. With the exception of this occasion, she has had no attention from an oculist since her arrival. Provision is made at the dispensaries for gratuitously performing operations, and furnishing artificial eyes, where the patient is without means; and where charges are made, they are graded according to ability to pay. A person of small means would not have to pay more than $75 for the operation, at most, and an artificial eye costs from $5 to $10. The operation can be performed while the patient is under the influence of an anæsthetic, and the testimony of oculists is that libellant could be out of the hospital in the course of a week, and it would have been better for her to have had the eye removed as soon as it became certain that the sight was hopelessly gone, so as to reduce the danger of sympathetic inflammation. It was the opinion of the ship's doctor immediately after the accident that the eye should be removed. There has, however, been no sympathetic inflammation, but it is possible that it may come hereafter. One oculist says that the probability is slight, while another states that no opinion of value can be expressed as to the probability, there being cases where such inflammation has set in years afterwards. Aside from the disfigurement, the delay has apparently not been prejudicial. She says that she has suffered from eye strain and headaches when attempting to read Polish, or to do any work requiring attention to an object close at hand, that when she attempts household work she suffers in the same way, and that about all she has been able to do since her arrival is to take her aunt's small children out to walk, although she tries to work every day. The eye strain and headaches are due to the greater effort which the muscles of the left eye are required to make; but that this difficulty may be overcome by using glasses is the opinion of both the oculists who testified after examining her while the reference was pending.

To show that her prospects of marriage have been seriously impaired, she testified that no young men call upon her, she knows none, and because of her sensitiveness about her appearance, she shuns the society of others, although she goes to church and has been to some social gatherings. The oculists testify to an operation which has become quite common of late years. The anterior portion of the eye is removed, leaving the shell, or what is commonly known as the white of the eye, to which the muscles are attached; in the shell is inserted a glass, paraffine, gold or platinum ball, usually glass or paraffine, and the shell is drawn over this ball and sewed; finally, a pupil is supplied by fitting over the ball an ordinary glass eye made a little thinner than usual, and held in place by the action of the eyelids. When this has been done, the artificial eye moves muscularly, and although there is some limitation to its lateral movement, there is substantially none to an up-and-down movement. By this

method, the fixity of the ordinary glass eye is avoided, and according to Dr. Thomson, the oculist called by respondent, the fact that the eye is artificial is scarcely perceptible upon casual observation. Dr. Thomson knew of no reason why this operation could not be successfully performed now in libellant's case, and the cosmetic damage resulting from the injury largely mitigated thereby. Dr. Wright, libellant's oculist, had doubts about the advisability of performing this particular operation. He said that where it is performed, the shell sometimes becomes irritated and inflamed, so that it is necessary to remove it. But he agreed with Dr. Thomson that there should be an operation of some kind for the removal of the eye.

Although an operation will lessen libellant's disfigurement, even if she has to make use of the ordinary glass eye, it is undeniable that throughout her life the calamity she has suffered will be the cause of difficulty in almost all her daily acts and movements, will make her less desirable and competent for any employment she might have expected to hold, will seriously affect her earning power, and will be a frequent source of chagrin and mental suffering, even if it be assumed that the left eye will never suffer any sympathetic injury, and that she will have to endure no further physical pain except such as may follow for a short time after an operation. Whether she will suffer pain other than that is conjectural. It is also conjectural whether the left eye will suffer sympathetic injury. But she is entitled to compensation for the physical and mental pain and suffering which she has already endured, the mental suffering she will hereafter endure, loss of earning power, past and future, the injury to her personal appearance, past and future, and the impairment of her prospects of marriage. That this last is an element to be considered in determining damages was held in Smith v. Pittsburgh & W. Ry. Co. [C. C.] 90 Fed. 783, where a girl of five lost a leg, and the jury gave her a verdict of $10,000. The judge refused to set aside the verdict as excessive, although in his judgment $7,000 would have been a reasonable compensation. Some of his observations apply to libellant's case. He said:

'The estimate must be entire, once for all, and hence we cannot wait to see how the unknown adversities or contingencies of the future may affect the question, as if, by some other calamity, these prospects which we presently estimate, should turn out to have had no existence at all; as if the girl should die before she reaches womanhood; or, having reached it, should find a profitable marriage notwithstanding the disfigurement. * * * A crippled woman is in a worse condition than a crippled man. To say nothing of the immense loss to her in the matter of personal attractiveness in respect of her chances of marriage, always her main reliance for a support in life, the infirmity lessens her feebler powers of meeting the demands upon physical exertion below the degree of impairment resulting to a man. The effect on her spirits and courage is more depressing, she feels the loss more than a man, and shrinks from the exhibition of her infirmity that is necessary to overcome its hindrances. Then there are the ordinary elements of physical and mental suffering, now, and forever during her life, so far as mental suffering goes, to be reckoned by the jury.'

Libellant's counsel cites many cases in this state and other states, where awards made by juries for personal injuries were examined by the courts with a view to determining whether they were excessive. Thus in Lafferty v. Third Ave. R. R., 85 App. Div. 592 [83 N. Y. Supp. 405], the court, while regarding a verdict of $12,000 as large, did not consider itself justified in reducing it where a girl 6 years old had suffered injuries which necessitated the amputation of the left arm below the elbow, leaving a sensitive stump, caused the development of the left side and shoulder to be arrested so as to be apparent to the eye, affected her nerves, and caused considerable pain. In Williamson v. Railroad, 53 App. Div. 399 [65 N. Y. Supp. 1054], the court refused to reduce a verdict of $22,500 where a boy of 11 years had been obliged to undergo two amputations, the first of which removed the lower portion of the leg a few inches below the knee joint, and the second the knee joint and all below it. In Kalfur v. Railroad, 34 App. Div. 267 [54 N. Y. Supp. 503], the court allowed a verdict of $15,000 to stand in favor of a child of 18 months whose leg had been lost above the knee. In Tully v. Steamship Co., 10 App. Div. 463 [42 N. Y.

Supp. 29], a man of 28, earning $12 a week, who had suffered the loss of a leg, obtained a verdict for $25,000, which the court held to be excessive, ordering a new trial unless plaintiff consented to reduce the verdict to $15,000. In O'Keefe v. Railroad Co., 33 App. Div. 324 [53 N. Y. Supp. 940], a man of 25, who had sustained injuries which resulted in the loss of the use of his right arm. obtained a verdict of $8,000, which the court refused to disturb as excessive, although it was considered large. But in considering these and similar cases, it should be borne in mind that the courts have repeatedly held that a verdict should not be set aside as excessive unless it is so disproportionate as to evince bias, prejudice, passion, or corruption. Yet in Peterson v. Roessler, etc., Co. [C. C.] 131 Fed. 156, the court held a verdict of $9,500 to be excessive where a laborer 39 years old, earning $1.50 a day, was injured much more severely than libellant, both his eyes having been burned out. There a new trial was ordered unless plaintiff consented to a reduction of the verdict to $8,000, consisting of $6,000 for complete destruction of earning power, and $2,000 for suffering. The awards of courts of admiralty in personal injury cases have been more conservative than the awards in the New York cases cited by libellant's counsel. He maintains in his brief that an award of $15,000 should be made, while respondent's counsel, if I remember correctly, contended in his argument that not more than $2,500 should be allowed. I think that $7,500 will be a fair amount. This does not seem to be excessive in comparison with awards made in this and other districts. The Mineola [D. C.] 44 Fed. 143; Anderson v. The Ashebrooke [C. C.] Id. 124; The Pioneer [D. C.] 78 Fed. 600; The Anchoria [D. C.] 113 Fed. 982; The St. Gothard [D. C.] 149 Fed. 790; The J. G. Lindauer [D. C.] 158 Fed. 449. I think that the sum stated is sufficient to cover all expense libellant may be put to by reason of an operation, besides all the other elements of damage I have mentioned above, including impairment of matrimonial prospects.

I therefore report libellant's damages to be $7,500."

Exceptions to the report were duly taken, and I am now asked to reduce the allowance to $2,500. The exceptions were as follows:

"First: The amount reported, to-wit, $7,500, is excessive.

Second: The commissioner gave undue weight to the alleged effect of the accident on the libellant's prospects of marriage.

Third: The commissioner did not give due consideration to the fact that the libellant has persistently refused to permit the removal of the injured eye and the substitution of an artificial eye.

Fourth: The commissioner did not give due weight to the fact that the libellant's earning capacity as a domestic servant would be but slightly impaired if she had been willing to have an operation performed and an artificial eye inserted.

Fifth: The commissioner did not give due weight to the fact that by the use of the proper lens the libellant would be able to perform her chosen work with little or no difficulty."

All of the matters which are the subjects of the exceptions have been so fully considered and ably treated by the commissioner, Herbert Green, Esq., that I do not think that more need be said about them. The libellant's counsel urged before the commissioner that the sum of $15,000 would be only a fair award under the circumstances, but did not take an exception to the report. I think, however, that the commissioner has reached a just but conservative estimate of the libellant's damages.

The exceptions are overruled and the report is confirmed.