E. W. Hoffman, as Administrator of the Estate of H. A.
Sturdevant, deceased, Appellant, v. The Cedar Rap-
ids & Marion City Railway Company.

**Evidence:** EXAMINATION OF WITNESS: DISCRETION: PREJUDICE. Re-
fusal to permit a witness to state on direct examination how he
arrived at his conclusion regarding a certain distance to which
he had testified was not an abuse of discretion, nor was it preju-
dicial: where it developed on his cross-examination that he had
seen the measurements made.

**Same:** CROSS-EXAMINATION. The cross-examination of expert wit-
nesses is largely a matter of discretion; and where it was not
apparent what bearing the rejected evidence would have upon the
issues, or that it would tend in any way to modify the testimony
already given by the witness, its rejection was not reversible error.
In the instant case the evidence sought was the subject of direct
testimony and not to be elicited on cross-examination, where it
had not been referred to on direct examination.

**Instructions:** REFERENCE TO PLEADINGS. Where the amended petition
was treated by the court in its instructions as the petition in the
case, and the jury had no knowledge of any other petition, subse-
quent reference in the instructions to the allegations of the petition
was not erroneous.

**Same:** WITHDRAWAL OF ISSUE: PREJUDICE. Where it was alleged that
defendant's street car was operated at a dangerous, reckless and
illegal rate of speed, but there was no evidence that the speed
was illegal, withdrawal from the jury of any claim that the car
was operated at an illegal rate of speed was not erroneous, on
the ground that the jury might have been thus led to believe that
no issue remained concerning the dangerous and reckless speed.

**Street railways:** NEGLIGENCE: LAST CLEAR CHANCE: INSTRUCTIONS.
Where the court clearly instructed that it was the duty of the
motorman to stop his car to avoid injury to decedent after discov-
ering his peril, failure to refer to the duty of the motorman to
"slow down" the car, as requested by plaintiff, was not erroneous;
as the duty to reduce the speed is included in the requirement to
bring the car to a stop.

**Same:** DEGREE OF CARE: INSTRUCTIONS. Where the court correctly instructed that it is the duty of a street railway company to use the highest care and foresight for the safety of passengers consistent with the practical operation of its cars, the further instruction that it is the duty of the motorman at all times to use reasonable care to prevent injury to all persons using the street, as well as passengers upon his car, was not erroneous, as tending to lead the jury to think that he was only required to use reasonable care for the safety of passengers.

**Same:** CUSTOM: INSTRUCTION. Where there was no evidence of a custom or usage to enter a street car at the front left-hand door, so that a person on the step would be in danger of being carried by a moving car against a trolley post, the refusal of an instruction that plaintiff's decedent had the right to assume, in the absence of knowledge to the contrary, that defendant had so constructed its tracks as not to expose a person to danger in so entering the car, was proper.

**Same:** NEGLIGENCE: WARNING: INSTRUCTION. In the absence of any showing that the motorman knew or should have known that decedent was attempting to enter the car at the front left-hand door, refusal of an instruction that after he became aware of deceased's intention to thus enter the car, thereby placing himself in peril, it was the duty of the motorman to warn him not to do so, was proper.

**Same:** LAST CLEAR CHANCE: INSTRUCTIONS. Where the jury was told that contributory negligence of deceased would bar recovery, the further instruction in explanation of the rule of the last clear chance, that if, after becoming aware of the peril of deceased, the motorman negligently failed to use the highest degree of care to avoid injury to him defendant would be liable, was not misleading.

**Same:** PASSENGERS: INSTRUCTION. Where the court gave a proper instruction regarding the care required of a carrier for the safety of its passengers, failure to define who is a passenger was not erroneous, in the absence of a request for such an instruction.

**Same:** COMPANY RULES: VIOLATION: NEGLIGENCE: EVIDENCE. The rules adopted by a railway company for the regulation of the conduct of its employees are not admissible in an action for the death of a third person, not charged with knowledge of such rules and not having acted in reliance thereon, for the purpose of showing that the company was liable for negligence on account of a violation of such rules.

Deemer and Weaver, JJ., dissenting.

*Appeal from Linn District Court.*—HON. F. O. ELLISON,
Judge.

FRIDAY, DECEMBER 13, 1912.

ACTION to recover damages for the death of plaintiff's
intestate, alleged to have been caused by the negligence of
defendant. There was a verdict for the defendant, and
from the judgment on such verdict the plaintiff appeals.—
*Affirmed.*

*Rickel & Dennis,* for appellant.

*William G. Clark* and *W. E. Steele,* for appellee.

McCLAIN, C. J.—The defendant maintains and op-
erates in Cedar Rapids an electrical street car line, and on
First avenue, running east and west, it has a double track;
the trolley wires being supported by iron posts set in a
row about 150 feet apart between the two tracks.   On
July 19, 1908, as one of the cars of the defendant coming
from the east on the north line of track along said avenue
approached the west side of First Street West, H. A.
Sturdevant, plaintiff's intestate, coming from the south
along the west side of First Street West, attempted, while
the car was still in rapid motion, to enter it by the front
vestibule door on the south or left-hand side of the car, the
door at that time being open, and after he had mounted
the step, but before he had entered the vestibule, he was
carried by the motion of the car against an iron trolley
post situated a few feet west of the sidewalk and received
injuries from which he died.   The negligence of the de-
fendant alleged in plaintiff's amended and substituted
petition was that it carelessly and negligently constructed
its tracks so near the line of trolley poles as to render the
act of getting on and off its cars at the place where

VOL. 157 IA.—42

Sturdevant received his injuries hazardous and dangerous; that it negligently operated the car in question with the front vestibule door open and without barricade on the south or left-hand side next to the line of trolley poles so as to invite entrance on that side, and with the knowledge of a usage and custom of passengers to board its cars on the side nearest the line of poles; that the motorman in charge of the car carelessly and negligently failed to have his car under proper control while crossing said First street, and carelessly and negligently failed to keep a proper lookout for passengers and persons about to board his said car, and carelessly and negligently failed to discover decedent when he was about to board said car, and negligently failed to stop the car after said motorman should have discovered decedent in his dangerous and perilous position while attempting to enter the car on that side; and that the motorman ran the car across said First street at a dangerous, reckless, and illegal rate of speed, in direct violation of defendant's rules and regulations. The defendant denied all allegations of negligence.

We have not attempted to state in further detail the plaintiff's allegations of negligence, for the reason that no complaint is made of the failure of the court in its statement to the jury of the issues to present to the jury all the issues raised by the pleadings.

I. Certain rulings of the court in the admission or rejection of evidence are complained of, and these may first be briefly noticed.

A witness for the plaintiff, a boy of twelve years of age, having testified that, when he last saw deceased, the latter was standing east of the trolley pole where he was struck, and about twenty-three or twenty-four feet from it, was asked by counsel for plaintiff how he arrived at his conclusion about the distance to which he referred, and who was with him. To this question it was objected that

1. EVIDENCE: examination of witness: discretion: prejudice.

it was in effect a cross-examination by the plaintiff of his own witness, and the objection was sustained. The court has, of course, a reasonable discretion in determining the character of questions which may be asked of a witness.

But however that discretion may have been exercised in the present instance, whether reasonably or not, is immaterial, for on subsequent examination by defendant's counsel it appeared that the witness had gone to the place on the preceding day with counsel for plaintiff, and had seen the measurements of the distance to which he referred actually made. No possible prejudice could have resulted from the ruling complained of.

A witness for the defendant, being called as an expert to testify as to the distance within which a car could be stopped, and having stated on cross-examination that he never saw any test made as to the distance within which a car could be stopped under certain conditions when going two or three miles an hour, and could not say how far such car would go before the wheels commenced to turn the other way on applying the reverse, was asked to state within what distance a car going two miles an hour could be stopped with the use of the brakes. An objection to this question as being incompetent, irrelevant and immaterial and not proper cross-examination was sustained. We have read the record of the testimony of this witness, and are fully satisfied that the ruling of the court was within the scope of the exercise of its reasonable discretion. It does not appear what bearing an answer to this question would have had on the issues presented to the jury, or that such answer as the witness might have given would have tended in any way to modify the testimony he had already given with reference to the subject-matter under investigation. He had not testified on direct examination as to the distance within which a car operating at the speed of two or three miles an hour could be stopped.

2. SAME: cross-examination.

If it was important for the plaintiff to have the opinion of the witness as to the distance within which a car going at that rate of speed could be stopped, we think the subject was one for direct testimony on his behalf. If the purpose was to test the credibility of the expert witness, then an answer to the question would have been of no value, for there was no evidence in the case with which the answer of the defendant could be compared in making such test. The subject of the latitude of cross-examination even of expert witnesses is largely within the court's discretion, although it is no doubt true that considerable latitude in this respect is properly permitted. Other objections to the ruling of the court relating to the cross-examination of this witness were so manifestly within the scope of its reasonable discretion that a discussion of them would be superfluous.

II. The court in its instructions treated the amended and substituted petition as the petition in the case, stating to the jury the issues of fact presented by defendant's answer thereto. There was no error, therefore, in referring later in the instructions to the allegations of the petition; for the jurors, having no knowledge of any petition save that designated by the court as the petition, to wit, the amended and substituted petition, could not have understood that the court was directing their attention to the first petition in the case, which had been superseded and which had not been referred to in the trial of the case.

3. INSTRUCTIONS: reference to pleadings.

III. After stating the issues in two instructions which are not presented in the record save by a general statement of their subject-matter, the court gave an instruction withdrawing from the jury any claim that the defendant was operating the car on which the accident occurred at an "illegal rate of speed" at the time in question, and this is complained of on the theory that the jurors might have been misled into

4. SAME: withdrawal of issue: prejudice.

supposing that all questions as to negligence in the speed at which the car was being operated were withdrawn. Plainly the instruction could not have had any such effect. The allegations of negligence in the petition which the court must have properly referred to in its instruction stating the issues related to a dangerous and reckless, as well as an illegal, rate of speed, and the sole effect of the instruction withdrawing an issue as to an illegal rate of speed was to leave it for the jury to say whether under the evidence the rate of speed was dangerous and reckless. It is not contended that there was any error in withdrawing the issue as to an illegal rate of speed *per se,* and as we understand the record there was no evidence that the car was being operated at a rate of speed prohibited by statute or ordinance at the point where the accident occurred. It is clear, therefore, that the jury could not have been led by the instruction given to assume that no question remained for their consideration as to a dangerous and reckless rate of speed.

IV.    An instruction was asked as to the doctrine of the last fair chance. That subject was covered at length, however, in instructions given by the court which are

5. STREET RAIL-
WAYS:
negligence:
last clear
chance:
instructions.

criticised only in that they referred to the failure of the motorman, after knowledge of the peril of the deceased, to stop the car so as to avoid the injury to him; whereas, the instructions asked related to the failure of the motorman under such circumstances to stop or "slow down" the car so as to have avoided the accident. We think the objection to the court's instructions in this respect is hypercritical. The duty of the motorman assumed in the instruction asked and specifically stated in the instructions given was to use reasonable care to avoid injury to decedent after his peril was apparent, or should have been apparent under the circumstances, to the motorman. If he employed every reasonable means available to him to stop

the car, he necessarily would have used every available means for reducing the speed, and, if a mere reduction of speed without a complete stopping of the car would have avoided the injury to decedent, then, under the court's instructions, the negligence of the motorman would have been sufficiently made out. Clearly there was no error in failing to specifically refer to the duty of the motorman to "slow down" the speed of the car.

V. In one of the instructions given, the court specifically and correctly instructed as to the degree of care required of defendant in providing for the safety and security of passengers being transported as **6. SAME: degree of care: instructions.** the highest degree of care and foresight reasonably consistent with the practical operation of its railway and the conduct of its business. This instruction was given in response to the claim of plaintiff that decedent, after he had attempted to enter the car by the front vestibule door, had become a passenger, entitled to protection as such. But it is contended it was error in the next instruction to tell the jury that it was a duty of the motorman "at all times to use due diligence and reasonable care to prevent injury to those people who may be using the street as well as the passengers upon such car." It is evident in the connection in which this last statement is made that the court was not attempting to limit the degree of care required as to passengers to reasonable care, and that the jury could not have so interpreted the instruction. Of course, the motorman was bound to use reasonable care as to persons on the street and as to passengers as well. The higher degree of care required as to passengers in distinction from other persons was specifically stated. The propositions of law thus stated to the jury were correct, and the jury could not have been misled into supposing that as to passengers the degree of care required of the motorman was that of reasonable care only. The instructions were in no way conflicting.

VI. . There was some evidence tending to show that passengers frequently entered the cars of the defendant through the door into the front vestibule on the left-hand side, if the door was open, and the plaintiff asked an instruction to the effect that decedent in mounting the car in that manner had the right to assume, in the absence of knowledge to the contrary, that defendant had so constructed and maintained its tracks and trolley supports as to not unnecessarily expose him to danger in boarding the car in question. The instruction asked was erroneous in assuming without any evidence whatever that the decedent was aware of a custom or usage to enter the car in that manner, and also in assuming that there was evidence of a custom or usage to do so while the car was in motion; for the evidence did not tend to show any custom or usage to attempt to enter through the door on the left-hand side in the front vestibule when the car was moving, so that a person on the step would be in danger of being carried against a trolley post. The instruction was properly refused.

7. SAME:
   custom:
   instruction.

VII. 'Another instruction asked and refused was predicated upon the thought that after the motorman became aware, or should have become aware, of the intention of deceased to mount the car at the front end on the left-hand side, thereby placing himself in a position of peril, it was the duty of the motorman to warn the deceased not to mount the car at that place, for by so doing the accident might have been prevented. But we find no evidence tending to show that the motorman either knew, or should have known, that the deceased was attempting to enter the car in this manner in time to have given any warning which would have prevented the accident. It must be borne in mind that the deceased attempted to enter the front vestibule door on the left-hand side while the car was in motion, and within a few feet of the trolley post against which he

8. SAME:
   negligence:
   warning:
   instruction.

was carried by the motion of the car, and that the jury was fully instructed as to the duty of the motorman to exercise the highest degree of care practicable after the deceased had, by mounting the step, placed himself in a position of danger to avoid injury to deceased by stopping the car. No further instruction on the subject was called for under the evidence.

VIII. In one of the instructions given the jury was told that contributory negligence of deceased would bar recovery, and in another that, notwithstanding the contributory negligence of deceased, the defend-

9. SAME: last clear chance: instructions.

ant would be liable if, after the motorman became aware of the dangerous position of the deceased, he negligently failed to use the highest degree of care to avoid injury to him. But the instruction last referred to was one given in explaining the rule of the last fair chance, and in that connection was entirely proper; at any rate, it was not an instruction of which the appellant can complain. From the connection in which the last mentioned instruction was given, it is clear that the jury could not have been misled into assuming that the instructions were in conflict, and that the former in any way interfered with the proper application of the latter. Each instruction was, so far as the plaintiff was concerned, wholly unobjectionable in the connection in which it was used and must have been understood.

IX. The court instructed the jury as to the standard of care required as to passengers, but it is complained that it failed to instruct as to who is a passenger entitled to such protection. The court did, however,

10. SAME: passengers: instructions.

correctly instruct as to the duty of the motorman to keep a lookout for persons desiring to become passengers, and to slow down the car and bring it to a stop for the purpose of taking on one wishing to become a passenger and, further, as to whether the deceased, intending to board the car as a passenger, was

guilty of contributory negligence in the method of doing so. From these instructions the jury must have understood that, while the deceased was attempting to board the car as an intended passenger, he was entitled to have exercised in his behalf that high degree of care required to be exercised for the protection of passengers. No further instruction on the subject was asked on behalf of the plaintiff, and the omission of the court to more specifically state the rules of law as to who is a passenger under such circumstances can not properly be made subject of complaint.

X. It appeared that the defendant company had promulgated certain rules for the government of its employees, and one of these was offered in evidence for the plaintiff, the only pertinent portion of which reads as follows: "Motormen must run slowly and with great care over all curves, frogs, switches, crossings, and special track work, holding car well in hand, and applying only such amount of power as may be necessary for its proper propulsion." To this offer the defendant objected on the ground that the rule was incompetent, irrelevant, and immaterial, with reference to the issues for determination by the jury, and without probative force as to the standard of care required to be exercised by the defendant. The claim for appellant is that in general the rules of the company requiring its employees to follow a specific course of conduct in discharging their duty towards their employer may be considered in determining whether the duty of the company towards others who are not employees, and who are without knowledge of such rules and have not acted in any way in reliance upon them, has been observed. On this question there seems to be some conflict in the authorities, although we think that an examination of the cases will show that the conflict is less marked than extracts quoted from the language of the courts used in disposing of the question might lead one to suppose.

11. SAME:
company rules:
violation:
negligence:
evidence.

In the first place, the duty of the company to make proper rules and regulations in order that its business may be safely conducted for the protection of its own employees is not here involved. If the sufficiency of such rules were in question, they would be, of course, admissible. *Cooper v. Central R. of Iowa*, 44 Iowa, 134. Plainly such rules are also admissible where the question is as to the negligence of a railroad company in so carrying on its operations as to result in the injury of an employee; for the employee must be presumed to have been aware of the method of operation prescribed by the rules promulgated for his guidance and protection, and to have been justified in relying upon their observance. This consideration sufficiently explains the suggestions briefly made by this court in disposing of the case of *Beems v. Chicago, R. I. & P. R. Co.*, 58 Iowa, 150, and on second appeal, 67 Iowa 435. Referring to the conclusions announced by this court in the case last cited, we have said that such rules may be received where the person complaining of the conduct of the company had the right to rely upon them, and that the plaintiff in that action "had a right in the discharge of his duties to rely upon the observance by his coemployees of the rules of the defendant intended for their guidance, of which he must have been presumed to have knowledge." *Hart v. Cedar Rapids & Marion City R. Co.*, 109 Iowa, 631.

In *Coates v. Burlington, C. R. & N. R. Co.*, 62 Iowa 486, in which recovery was asked for injury to a brakeman resulting from his foot being caught in an unblocked frog, an order of the defendant company requiring all frogs to be blocked was held to have been properly admitted, on the ground that the existence of a general order of this character was important as a circumstance, in the nature of an admission that, without some protection, unblocked frogs are dangerous to employees whose duty requires them to go upon the track in close contact with moving trains. The

case is not pertinent to the question now under consideration, for the reason that, in the first place, the question was as to the duty of the company to its employee, and, in the second place, the rule was in fact received in evidence, and, as will be indicated later, a holding that it was not error to receive such offered evidence does not necessarily lead to the conclusion that the rejection of like evidence when offered is necessarily prejudicial error. On the other hand, in *Burg v. C. R. I. & P. R. Co.*, 90 Iowa, 106, 114, it was held that in an action by a trespasser for negligence of the employees of the railway company resulting in injury to him, "rules and regulations adopted by the company for the preservation of its passengers and trains do not apply to tresspassers on its road, whose own wrongful and negligent conduct places them in danger, and the only obligation or duty on the part of the company or its employees in such a case is when made aware of the danger to avoid inflicting any injury, if by the exercise of ordinary diligence they could prevent it"; and, having adopted this view in language used by another court, we said that "it is hardly to be doubted that the company had in view in promulgating the rule only such obstructions to the track as might arise from the conduct and management of the road, and not obstructions not in reason to be anticipated," this observation being made with reference to a rule of the defendant company requiring that a sharp lookout be kept "for all work trains, section men, and others who may be obstructing the track."

Referring now to decisions in other states bearing upon the question before us, we find that rules have been held admissible, not only where the action is by an employee who may be presumed, on account of his relations to the company, to have had knowledge of rules made for his protection, and to have relied upon the observance of such rules in the conduct of the company's business, *Meyers v. San Pedro, L. A. & S. L. R. Co.*, 36 Utah 307 (104 Pac.

736, 21 Ann. Cas. 1229), but also where the rules related to the method of operating the trains of one company with reference to like operation of trains of another company, so that the employees of the latter may be presumed to have relied upon the observance of its rules by the employees of the former. *Chicago, M. & St. P. R. Co. v. O'Sullivan,* 143 Ill. 48 (32 N. E. 398). It has also been held that a mail clerk on a train is charged with the same knowledge of the rules of the company for the operation of its trains as an employee, and is therefore entitled to rely on the observance of such rules. *Chicago & A. R. Co. v. Kelly,* 75 Ill. App. 490.

But by what we regard as the decided weight of authority, as well as in accordance with sound reasoning, it has been held that in cases of injury to persons who are not charged with the knowledge of the company's rules, and who have not acted in reliance thereon, the rules of the company for the regulation of the conduct of its employees are not admissible in evidence for the purpose of showing that the company was liable on account of the violation of such rules as constituting negligence. Thus in *Alabama G. S. R. Co. v. Clark,* 136 Ala. 450 (34 South. 917), it was held that in an action against the company for its negligence in the destruction of property due to fire set out by sparks from its engine, it was error to admit in evidence the rules of the company regulating the conduct of its employees in the operation of its engines; the court saying: "By rules adopted for the government of its employees in the management of its internal business, the defendant company could not lessen the degree of care which the law requires, and it would be unreasonable to hold the defendant to a higher degree of care than the law imposes, because in its rules, in order to more thoroughly guard against accidents, it exacted an unusual or extraordinary degree of care of its employees. The rule of the company introduced in evidence over the objection of de-

fendant, and which was made for the government of its
employees, required the exercise of a greater degree of care
than that of an ordinarily prudent man; it required the
exercise of every precaution.  This evidence was not with-
out prejudice to the defendant, and its admission was
error." In *O'Keefe v. Eighth Ave. R. Co.,* 33 App. Div.
324 (53 N. Y. Supp. 940), it was held not error to refuse
to admit in evidence the rules of the company as to the
duty of the driver of a street car with respect to the rate
of speed to be observed in rounding curves, "because in
no way could they (such rules) be binding upon the plain-
tiff, nor was it material or relevant in answer to the charge
that the car in this instance had gone around in a careless
manner, and at a high rate of speed, to show that the rules
of the company forbid such management of the car while
rounding a curve." In the case of *Isackson v. Duluth
Street R. Co.,* 75 Minn. 27 (77 N. W. 433), a judgment
for the plaintiff on account of injuries received by him
while passing along the street due to his being run over
by a street car of the defendant was reversed on account
of the admission in evidence by the lower court of a rule
requiring the motorman to keep a sharp lookout to avoid
running into pedestrians; and the court uses this language:
"This is a special rule of the defendant company for its
motormen to obey, and so designated in the book of rules
furnished them by the company, and introduced in evidence
by the plaintiff against the objection of the defendant. This
rule is evidently intended for the guidance of its own
motormen and as a standard of duty to the company on
the part of such motormen.  But there is not the slightest
evidence to show that the plaintiff knew or relied upon it."
Rules may be adopted by the company which impose a
higher degree of care upon its employees than that imposed
by the law itself.  Such rules are meritorious, in this:
that the stricter the rules are against negligence or wilful
misconduct, the more they tend to make the employee

diligent and careful in his management of the car, and thus lessen the dangers which result in personal injuries either to passengers or persons on the track of a railway company. There was no evidence showing or tending to show how long this rule had been in existence, or of any custom based upon it, and, in the absence of knowledge of such custom, plaintiff could not have been influenced by it in his conduct at the time of the injury. See *Terien v. St. Paul City Ry. Co.,* 70 Minn. 532 (73 N. W. 412); *Fonda v. St. Paul City Ry. Co.,* 71 Minn. 438 (74 N. W. 166, 70 Am. St. Rep. 341). The rule required a higher degree of care on the part of the motorman than the law imposed upon the company itself. This case and other cases cited by the same court discussing quite fully the admissibility of rules under such circumstances was fully approved by us in the case of *Hart v. Cedar Rapids & Marion City R. Co.,* already cited, 109 Iowa, 631.

It must be conceded, however, that in *Stevens v. Boston Elevated R. Co.,* 184 Mass. 476 (69 N. E. 338), and *Cincinnati Street R. Co. v. Altemeier,* 60 Ohio St. 10 (53 N. E. 300), it has been held not to be error to receive in evidence in an action for negligence brought by a passenger or a person injured on the streets the rules of a street car company with reference to the management of its cars by its employees. In the Massachusetts case such a rule was said to be analogous to the ordinance of a city regulating the management of street cars and also an indication of the precautions thought necessary for the protection of others in the management of its business; while in the Ohio case the admissibility of the rules was predicated on the thought that they were a part of the *res gestae,* rather than admissions on its part of the degree of care required under the circumstances of the case. It is to be noticed that in each of these cases the rules were admitted in evidence, and the court refused to reverse on that ground, and in the Ohio case it is suggested that no harm could have resulted from

admitting the rules, and that, as they did not require a higher degree of care on the part of the company than the law required, their introduction was not prejudicial. In *Lyman v. Boston & Maine R. R.,* 66 N. H. 200 (20 Atl. 976, 11 L. R. A. 364), it is said that an exception to the admission of rules of the company requiring a wild engine not to be run on crossings over fifteen miles an hour when a red flag had not been sent out on the preceding train required no consideration, the action being for negligence in causing the death of one who was run over by a wild engine at a farm crossing on his own land. But it appears that the rule was admitted in evidence on the theory that the deceased had no notice of the running of a wild engine at a time when no regular train was due; and plainly the view of the court was that deceased had a right to rely on the usual method of operation of the trains unless the signal required by the rules was given on a regular train that an extra engine or train was to follow. One who is accustomed to use a railroad crossing, and especially one who is working about his own land in proximity to the railroad, and using his private crossing in connection with such work, is justified in taking into account the usual operation of trains along the track and the usual signals given of extra trains or engines which may imperil his safety. We think this case is not one which supports appellant's contention in the case now before us.

In *Baltimore & Ohio R. Co. v. State, Use Chambers,* 81 Md. 371 (32 Atl. 201), it was held that, in an action for negligently causing the death of deceased at a railway station by running a train through the station without stopping on a track adjoining that from which the deceased had just dismounted, a rule of the company forbidding the operation of trains in this manner was properly admitted in evidence; the court saying that there was nothing in the record to show that the rule was one for the guidance of the company's employees only, and not

intended for the eye of the public, but that, even if the rule was only intended for the employees of the company, yet, if it was a rule previously complied with, the public was authorized to enforce a continuance of the custom which would result from an observance of the rule, and that, without any rule upon the subject, it was negligence on the part of the company to operate its trains in such manner as would imperil the safety of passengers dismounting from a train. It is plain that in this case the operation of the train which injured the deceased was negligence without regard to any rule, and therefore that the admission of the rule in evidence could not have prejudiced the defendant, for nothing was required by the rule which would not have been required by law. In *Lake Shore & M. S. R. Co. v. Ward,* 135 Ill. 511 (26 N. E. 520), which was also a case of the injury of a passenger who had dismounted from a train at a station, it was held that there was no error in receiving in evidence a rule forbidding their trains or engines on another track passing between the standing train and the station, for the reason that the rule was in the nature of an admission by the company that due care in the running and management of their engines and trains at stations required the course of conduct prescribed by the rule. Here again it is apparent that nothing more was required by the rule than would have been required in the proper operation of trains if no rule on the subject had been in existence, and that the admission of the rule in evidence was in no way prejudicial.

What has been said with reference to the last two preceding cases cited is applicable to the cases of *Georgia R. R. v. Williams,* 74 Ga. 723, and *Atlanta Consol. St. R. Co. v. Bates,* 103 Ga. 333 (30 S. E. 41), in which without discussion, the court refused to reverse on the complaint that a rule of the company had been admitted in evidence which required precautions to be taken by employees in

the operation of trains or cars. In discussing the cases which we have already referred to relating to the admissibility of rules for the government of employees in actions brought for injuries to passengers or others not in the employment of the company, Judge Thompson, in his work on Negligence (volume 6, page 739), says that courts allowing the admission of such rules generally proceed on the theory that their promulgation is a recognition of the necessity of their enforcement to prevent accidents, and that they are a part of the *res gestae*; and he continues: "Another line of decisions refuses such evidence in cases where the plaintiff was ignorant of their existence at the time of receiving his hurt, on the ground that his conduct could not have been in any way influenced by such rules, and for the further reason that a person *can not by the adoption of private rules fix the standard of his duty to other persons.* The reason against the admission of these rules would seem specially strong where they impose a *higher degree of care than the law requires."* The italics are those of the author. It is to be noticed that in none of the cases relied on as authority for the admissibility of such a rule as we are now considering was the court asked to reverse on the ground that the lower court had refused to receive such a rule in evidence. They were all cases in which the rule received in evidence required no higher degree of care on the part of the employees than would have been required by law had no rule on the subject been in existence. It does not follow, therefore, that, if in these cases the court had refused to admit the rules in evidence, a reversal would have been deemed necessary had the judgment been for the company. On the other hand, the cases in which the courts have held such rules to be inadmissible have been cases where either the rule has been rejected and the action of the trial court has been affirmed, or cases in which the rule has been admitted, and

the ruling of the trial court has on that ground been reversed.

That the rule rejected in the case before us was wholly immaterial, and could have been of no assistance to the plaintiff in enabling him to make out a case, is apparent from the fact that, so far as applicable to the case before the court, it simply required the motorman to run his car slowly and with great care over crossings, holding the car well in hand, and applying only such amount of power as might be necessary for its proper propulsion. If plaintiff was entitled to recover at all, such recovery was necessarily predicated on the duty of the defendant toward plaintiff as a passenger; that is, toward one who, for the purpose of being transported on the car as a passenger, was attempting to enter it. But, if the rule could be construed as requiring under the circumstances a higher degree of care in operating the car over the crossing than that required by law, then, as indicated in the cases cited and referred to by Judge Thompson, it was plainly not admissible. It would be unreasonable to say that such a company as the defendant can not prescribe rules for the conduct of its employees without thereby being held to an admission that the failure to observe such rules would be negligence, attributable to it in its relations to other persons, as well as a breach of obligation on the part of the employee to the employer. If such rules are to be so construed, then it would be plainly against the interests of the company to make any rules whatever for fear they could be construed into admission of negligence when violated; whereas, it is equally plain that the company has an interest with reference to the management of the details of its business in prescribing specifically what its employees should do under particular circumstances. Such requirements may well be important in regard to the safety of the company's property and the expedition required in the

transaction of its business without having any bearing whatever on the question of its negligence.

In conclusion it is sufficient to say that having in the case of *Hart v. Cedar Rapids & Marion City R. Co., supra,* 109 Iowa, 631, expressly approved of the reasoning adopted in the Minnesota cases for the exclusion of such a rule when it relates only to the conduct of the company's business by its employees, we are unwilling now to adopt the reasons announced in some other courts in refusing to reverse where a rule has been received in evidence which does not require any higher degree of care than that which would be required had no such rule been in existence.

The decision of the trial court is therefore—*Affirmed.*

DEEMER, J. (dissenting).—If the majority had been content to place the decision upon the ground that no prejudice resulted from the exclusion of defendant's rules, I would not object to the conclusion reached. But, as the opinion proceeds upon the theory that such rules are inadmissible in negligence cases, I must withhold my concurrence. The effect of the decision will be to hold that, if such rules be admitted, prejudice will be presumed, and every subsequent case must be reversed where such rules are admitted in evidence. I do not think this doctrine is sound in principle, or supported by the weight of authority. I believe that such rules as are here involved are promulgated for the safety, not only of passengers, but of all persons rightfully on the streets, and that they are in the nature of an admission by the defendant of the degree of care required for the protection of these persons. If they require more than the law would exact, that matter can easily be covered by instructions. But in the majority of instances, and especially in this case, the rule did not require anything more than the law imposes. My conclusions find support in *Railroad Co. v. Altemeier,* 60 Ohio St. 10 (53 N. E. 300) ; *Railroad Co. v. Ward,* 135 Ill. 511

(26 N. E. 520); *Railroad Co. v. State,* 81 M̃d. 371 (32 Atl. 201); *Lyman v. Railroad Co.,* 66 N. H. 200 (20 Atl. 976, 11 L. R. A. 364); *Stevens v. Railroad Co.,* 184 Mass. 476 (69 N. E. 338); *Meyers v. Railroad Co.,* 36 Utah 307 (104 Pac. 736, 21 Ann. Cas. 1229); *Railroad Co. v. Bates,* 103 Ga. 333 (30 S. E. 41); *Railroad Co. v. O'Sullivan,* 143 Ill. 58 (32 N. E. 398); *Railroad Co. v. Williams,* 74 Ga. 734.

WEAVER, J. (dissenting).—I fully concur in the dissent expressed by Mr. Justice Deemer. I take issue upon the proposition that this court has ever before directly or indirectly committed itself to the doctrine of the majority opinion. More than that, but two courts of last resort in this country—the courts of Alabama and Minnesota—have ever shown any leaning in that direction. In the former case cited by the majority the question is passed upon in a brief dogmatic or perfunctory way without citation of authority. In the latter case the opinion is founded solely upon the manifestly unsound assumption that the rules in question were adopted to prescribe the duty of the motorman to the company alone and not to the public, and their disregard by the motorman would be no evidence of negligence in an action by a third person. The same sort of reasoning would exclude the evidence in an action brought by an injured employee, but the majority concede, as do all the cases, that the evidence is admissible in an action of that nature. On the other hand, the Supreme courts of Ohio, Massachusetts, Maryland, Illinois, and Georgia have distinctly held the evidence competent, as is pointed out in the dissent of Deemer, J., and the logical force of the reasoning by which their views are upheld is in my judgment irresistible. I shall not take the time to discuss the cases, except to say that our own decisions on which the majority seem to rely are not in point upon the question before us. The *Burg* case was an action by a tres-

passer, and is so foreign to the issue here presented that I can only express my surprise at its citation. In the *Hart* case the point, although mentioned, was neither involved nor passed upon by the opinion, because it was found that, even if the admission of the evidence was error, it was without prejudice. All the other cases were actions by employees, and it was held the admission of the rules in evidence was not erroneous.

The judgment below ought to be reversed, and a new trial ordered.